## JAMES N. CUSHING *vs.* GARDNER F. DANFORTH.

### Penobscot.    Opinion April 7, 1884.

*Forcible entry and detainer.    Joint tenants.    Trust.*

C and D bought a stock of goods and the good will of a store and divided the stock and store, each taking separate portions. The facts and circumstances were such as lead the court to believe that D expected a joint lease of the premises from the owner, and he understood, and had a right to understand, not only from the relationship between C and himself, but from the acts and representations of C, that C would and did obtain such a lease, while, in fact, C obtained a lease in his father's name, who brought forcible entry and detainer against D for the part occupied by him.    *Held:*

1. That C was acting in a fiduciary character when he obtained the lease, and that he must be deemed to hold it in trust for D as well as himself.

2. That C's father was a passive trustee for C, and the same trust attached to his lease.

3. That D had an equitable title to the premises, sufficient to maintain his defence against C's father.

ON REPORT.

The opinion states the case and material facts.

*Barker, Vose and Barker*, for the plaintiff, contended that the defendant, if tenant of anybody, was the tenant of R. J. Cushing, plaintiff's son, and that Cushing was a tenant at will of the whole premises, and his tenancy terminated by mutual agreement between him and the owner.    The termination of Cushing's tenancy terminated that of the defendant who held under him. *Coburn* v. *Palmer*, 8 Cush. 126.

The relation of landlord and tenant never existed between the owner, Mr. Bowman, and the defendant.    See Bouvier's Law Dict. 574; *Howard* v. *Merriam*, 5 Cush. 570; Taylor's Landlord & Tenant, 10; *Cunningham* v. *Holton*, 55 Maine, 33; *Moshier* v. *Reding*, 12 Maine, 478.

Defendant says he never had any talk with Mr. Bowman, his talk was all with Cushing, until a controversy arose between them, then defendant went to the owner.

If the defendant was a tenant of the owner, the written lease to the plaintiff for a term of years, terminated such tenancy, without the thirty days notice to quit. *Kelly* v. *Waite*, 12 Met. 302; *Esty* v. *Baker*, 50 Maine, 333; *Hollis* v. *Pool*, 3 Met. 350; *Hildreth* v. *Conant*, 10 Met. 298; *Furlong* v. *Leary*, 8 Cush. 409; *Evans* v. *Reed*, 5 Gray, 308.

*H. L. Mitchell and C. P. Stetson*, for the defendant, cited :: *Copeland* v. *Copeland*, 28 Maine, 539; *Caincross* v. *Lorrimer*, 7 Jurist, N. S. 118; Story's Eq. Jur. §§ 15–46; *Chapman* v. *Pingree*, 67 Maine, 198; *Cummings* v. *Webster*, 43 Maine, 192; *Hatch* v. *Kimball*, 16 Maine, 146; *Fogg* v. *Littlefield*, 68 Maine, 52; 1 Greenl. Ev. § 207; *Pope* v. *M. W. P. Co.* 52 Maine, 535; *Thurston* v. *Doane*, 47 Maine, 79; *Morton* v. *Hodgdon*, 32 Maine, 127; *Johnson* v. *Wingate*, 29 Maine, 404; *Carroll* v. *M. L. R.* 111 Mass. 1; *Turner* v. *Coffin*, 12 Allen, 401; *Hinckley* v. *Greany*, 118 Mass. 595; *Horn* v. *Cole*, 51 N. H. 287; *Stevens* v. *Dennett*, 51 N. H. 324; *Warring* v. *Somborn*, 82 N. Y. 604; *Royce* v. *Watrous*, 73 N. Y. 28, 597.

DANFORTH, J. This is an action of forcible entry and detainer, originally entered in the police court, for the city of Bangor, and brought into this court by the plaintiff, and is now before the law court upon a report and exceptions. From the copy of the record filed when the action was entered, it appears that in the police court the defendant with the general issue, filed a brief statement, alleging title in the premises in question to be in Hollis Bowman, under whom he claims as tenant, and that a counter brief statement was filed, alleging that the claim of title "was frivolous and intended for delay." Upon a hearing, this statement, as the records show, was found to be untrue, where-upon the plaintiff removed the case to this court with the records in due form.

At a subsequent term of the court, and without any suggestion upon the docket of any error in the record already filed, the defendant offers what he claims to be an amended record from the police court, but duly authenticated as a complete record of the case, and moves for leave to file it in court as such. This

motion was denied and exceptions were taken. Precisely what the counsel expected would follow an allowance of his motion, or what, in fact, would follow is not very apparent. The first was filed by the party whose duty it was to do so; no defect appears in it, and none has been pointed out, and it is duly authenticated. The second is equally authenticated and differs from the first only in the judgment ordered; and while the first follows the issue as made up, the second does not, but decides the question of title, ignoring the request for a removal of the case upon that issue. The only alternative for the presiding justice was to receive the first and reject the last, or ascertain from other evidence which was the true record of the police court. At the suggestion of the plaintiff he pursued the latter course. After hearing the testimony, which is reported, he made the ruling complained of. This decision simply settled the question as to which was the true record, and was the settlement of a matter of fact rather than of law; but whether the one or the other, it was clearly correct, and the exceptions must be overruled.

Thus the action is brought before this court upon the issue of title only, and the case of *Abbott* v. *Norton*, 53 Maine, 158, upon satisfactory grounds, has decided that that issue alone can be tried here. Hence upon a report, as well as before a jury, all evidence not relevant to that issue must be rejected.

The title set up in defence is that of Hollis Bowman, under whom the defendant claims as tenant. The title of Bowman is not denied, but the tenancy is. In fact both parties claim under him. It is also conceded that the plaintiff, at the commencement of these proceedings, had a written lease from Bowman, running to him alone, while the evidence shows that the defendant had no contract of tenancy with Bowman, either written or verbal, but his counsel claims that the proof shows such transactions and representations on the part of Reuel J. Cushing, a son of the plaintiff, and such relation between the father and son as estops the plaintiff from denying the defendant's tenancy under Bowman.

Upon these transactions and representations there may be some conflict of testimony, but not enough to throw any real

doubt as to the facts upon which the decision of the case must depend.

It appears that on or about April 1, 1881, Daniel White was in possession of the premises in question, as a tenant, under Mr. Bowman, and had been so for many years previous to that date. He had in the store a stock of goods which he was desirous of selling. R. J. Cushing, with the defendant, jointly entered into an agreement in writing with White to purchase his goods, "with the good will of the business carried on in said store." The purchase was completed in accordance with the terms of that agreement, with the understanding that the business was to continue in that store. Before the conclusion of the sale, the purchasers agreed upon a division of the goods, and the portion of the store each was to occupy ; and the division was so made, and each paid for his portion and took the part of the store allotted to him. The good will was not, and could not be, divided. It could only be enjoyed jointly and by remaining in the store. Before the completion of the purchase, the defendant not being satisfied with a tenancy at will, urged the necessity of obtaining for their joint benefit a written lease from Bowman. Cushing claimed that this was unnecessary, and finally agreed that he would arrange with Bowman so that they would be safe with a verbal lease only. There was no suggestion that Cushing would take a lease of any kind to himself alone, but the only conclusion which can be drawn from the testimony is that the defendant understood, and from the acts and representations of Cushing was fully justified in understanding that Cushing would, and subsequently that he had, obtained a joint verbal lease from Bowman, and in consideration or as a consequence of that, made the purchase of the goods and paid the money for them. Though Cushing was not a partner with the defendant in the strict sense of that term, the two were acting jointly with one common purpose in view, especially in obtaining the good will of the business, and what was necessary to that, the occupation of the store, which was to, and must come from, Bowman. Cushing undertook to obtain a lease to secure that occupation for the benefit of both. The defendant placed confidence in him that he

would do so, and acted accordingly. He subsequently found that Cushing had taken the lease to himself alone.

Under these circumstances it may well be that R. J. Cushing would be estopped to deny the tenancy of the defendant under Bowman. But whether such an estoppel alone would avail in the defence of this action may well be doubted. But it is not necessary to decide that question. When R. J. Cushing obtained that lease he was acting in a fiduciary capacity, and as an agent for the defendant as well as himself. Under such circumstances it is settled beyond controversy, that he cannot retain to himself any advantage thus secretly obtained, but must be deemed to hold it in trust for him, for whom he was, or in good faith should have been acting. It is so held as between partners. Collyer on Part. § 179 ; also in case of co-sureties, *Scribner* v. *Adams*, 73 Maine, 541–549, 550, and in the case of trustees, 1 Green. Cruise, 364, and note; 1 Story on Eq. Jur. § 322. In § 323, Story applies the principle to all cases " where mutual agencies, rights and duties, are created between the parties by their own voluntary acts, or by operation of law," and lays down the general rule as follows : " On the whole, the doctrine may be generally stated that wherever confidence is reposed, and one party has it in his power, in a secret manner, for his own advantage, to sacrifice those interests he is bound to protect, he will not be permitted to hold any such advantage." In 4 Kent, 307 (12 ed.), it is said to be, "a general and well settled principle, that whenever a trustee or *agent* deals on his own account, and for his own benefit with the subject intrusted to his charge, he becomes chargeable with the purchase as trustee. Thus though Cushing held the tenancy in his own name, he held it in trust for the defendant as well as for himself. To hold otherwise would be to permit him to take advantage of his own wrong.

It is, however, contended that Bowman was not cognizant of this wrong and was not bound by it, and when he gave to the plaintiff the written lease it cancelled the tenancy at will. This proposition is evidently true. But under the circumstances of this case it neither helps the plaintiff to make out his case, nor injures the defence.

The proof is abundant to show that in the written lease the plaintiff is a mere passive trustee for his son. He took no part in obtaining it, did not want it, has never paid any rent under it, or at any time occupied the store. The son was the active man in all these matters, procured the lease, has continued to occupy the store as before; paid all the rent, and as he says, it was made in the name of the father, that he might get rid of his tenant. The new lease, therefore, took the place of and was tantamount to a renewal of the old, and is, therefore, subject to the same trusts. 1 Green. Cruise, 364; 4 Kent, 306 (12 ed.).

Hence, though the defendant might not have had a legal interest in the lease, which would entitle him to a defence against any person holding it as a *bona fide* purchaser without notice of the trust, he had an equitable interest sufficient to enable him to defend as against this plaintiff.

*Judgment for defendant.*

PETERS, C. J., WALTON, BARROWS and LIBBEY, JJ., concurred.