JEREMIAH P. ROBINSON et al., Individually and as Executors, etc., Respondents, *v.* FRANCIS D. BEARD et al., as Executors, etc., Appellants.

In 1849 B., defendants' testator, received a lease of certain lands bordering upon and under water in the city of New York for twenty-one years, which lands were to be improved and reclaimed by the lessee. The lease contained a covenant for a renewal; the second lease also to contain a covenant for renewal, the lessors, however, to have the option at the termination of the second term to pay the value of the buildings on the demised premises instead of executing a third lease. In 1851 B. executed to R. and W. a sub-lease of a portion of the premises for nineteen years, to expire with the original lease. The sub-lease provided that at its expiration B. should grant a new lease for a further term of twenty-one years, to contain like conditions as the former, except the covenant of renewal, instead of which should be inserted an optional covenant as above stated. At the end of the sub-lease was a provision to the effect that if B.'s lessor should at any time grant to him any rights or privileges in regard to renewal or to the use and enjoyment of the premises, that the rights and privileges so granted should inure to the benefit of

his lessees. In 1870 B. executed a new sub-lease to R. and W., containing a covenant for payment of the value of the buildings or the granting of a new lease for a further term "if the party of the first part (B.) shall elect to grant the same." The last clause of the new lease was the same as that in the first one above referred to. In 1891 defendants, as the successors in interest of B., received a new lease for twenty-one years, but refused to grant a new sub-lease, claiming the right to an option to pay for the buildings. In an action to compel the execution of such sub-lease, *held*, that the last clause in the sub-lease was designed to qualify the option ; that it was the intent of B. to give to his lessees the same advantages and opportunities he possessed or should acquire, and practically substituted them in his place as to that portion of the land covered by the sub-lease, and defendants, having obtained the grant of another term, had no right to elect to terminate the sub-letting; and so, that plaintiffs were entitled to the relief sought.

(Argued October 20, 1893 ; decided November 28, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 31, 1893, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to compel the defendants to execute and deliver to the plaintiffs a renewal of a lease, which the defendants' testator had made to Robinson and Woodruff, the predecessors in interest of the plaintiffs, of property in Brooklyn. The facts found by the trial court are not in dispute ; but it is contended that a different legal conclusion should have been drawn.

In 1849, the trustees, etc., of the Brooklyn Benevolent Society leased a certain tract of land for a term of twenty-one years to William H. Beard, by a lease which contained a covenant for a renewal, dependent upon the lessee's performance of conditions and covenants specified. It was agreed that the second lease should contain the same covenants and conditions, except the covenant of renewal ; in lieu of which a covenant should be inserted giving an election to the lessors, at the expiration of the term, either to pay the value of the buildings or to grant a new, or third, lease for a further term of twenty-one years ; which should contain like covenants and conditions,

except as to a further renewal; but wherein should be a provision that at the expiration of the term payment should be made of the value of the buildings, or for the giving of a further, or fourth, lease for another term of 21 years, and containing the covenants of the existing lease.

In 1851, Beard made to Robinson and Woodruff a sublease of a portion of the leased premises for nineteen years, expiring contemporaneously with the principal lease. Beard agreed that at its expiration he would grant a new lease to his lessees for a further term of 21 years, for a rent to be ascertained, and to contain like covenants, etc., except the covenant of renewal; instead of which there should be inserted the optional covenant on the lessor's part to pay the value of the buildings, or to grant a new lease for a further (third) term of 21 years; which lease should contain like covenants, etc., except as to further renewal, and should provide for the payment for the buildings, or for the giving of a new, or fourth, lease, etc., etc. At the end of the instrument was inserted the following clause:

" And it is further agreed and understood that if any rights or privileges shall at any time be granted by the said The Brooklyn Benevolent Society to the party hereto of the first part (*i. e.*, Beard) in regard to the renewal of the aforesaid lease, made by them to the party hereto of the first part, or in relation to the use or enjoyment of said premises, then the same rights and privileges so granted shall accrue and inure to the benefit of the parties of the second part in the same manner as if they had been herein specifically granted."

In 1870, Beard executed a new (sub) lease of the premises to his lessees for the term of 21 years, with various covenants, among which was one for the payment, at the expiration of the term, of the value of the buildings, or for the granting of a lease for a further term of 21 years, which lease, "*if the party of the first part shall elect to grant the same,*" shall contain like covenants, etc., "*except as to the further renewals of the said term as are hereinbefore contained,*" and be for a further term of 21 years, at a rent to be ascertained, and shall

contain a provision, either for the payment of the value of the buildings, or for the giving of a new lease for a further term of 21 years and with like covenants, etc., " except the covenant of renewal." The last clause of this new or sub-lease of 1870 was similar to and in the same language as the one quoted from the first lease made by Beard. In 1891, the defendants were granted a new lease from the benevolent society for 21 years. They, however, claiming the right to an option on their part, notified these plaintiffs of their election to pay them the value of their buildings. The plaintiffs claimed to be entitled to a new lease for 21 years. This the defendants refused, and plaintiffs brought this action to compel them to do so.

*Edward Hinman* for appellants. The rights of Beard as against Robinson are similar to the society's rights as against Beard. (*Collins* v. *Hasbrouck,* 56 N. Y. 157; *Ganson* v. *Tifft,* 71 id. 48.) Construing the last clause of the sub-lease as a covenant for renewal renders other clauses meaningless and absurd. (*Rhodes* v. *Newhall,* 126 N. Y. 564; 2 Pars. on Cont. [7th ed.] 513; Shep. Touch. 88; *Cope* v. *Cope,* 15 Sim. 118; *Cartwright* v. *Amatt,* 2 B. & P. 43; *Rubery* v. *Jervoise,* 1 T. R. 229.) As the plaintiffs have invoked the extraordinary remedy of a decree for specific performance, the burden throughout this action is upon them to satisfy the court that the defendants' testator knowingly entered into the engagement which is sought to be enforced. (*Iggulden* v. *May,* 9 Ves. Jr. 237; *Baynham* v. *Guy's Hospital,* 3 id. 298; *Harnett* v. *Yeilding,* 7 S. & L. 558.) Even admitting that the last clause of the sub-lease is a covenant of renewal, it has been satisfied. (*Mulhenbrinck* v. *Pooler,* 40 Hun, 526; *Syms* v. *Mayor,* 105 N. Y. 158; *Rutgers* v. *Hunter,* 6 Johns. Ch. 215; *Banker* v. *Braker,* 9 Abb. [N. C.] 471.) There is no covenant to renew *toties quoties.* (*Cook* v. *Allen,* 67 N. Y. 578.) The Supreme Court's construction renders the sub-lease oppressive and inequitable to defendants. (*Russell* v. *Allerton,* 108 N. Y. 288; *Harnett* v. *Yeilding,* 2 S. & L.

549.) The Supreme Court having construed the last clause of the sub-lease of 1870 as the covenant of renewal, such clause should be omitted from the new sub-lease. (*Pigott* v. *Mason*, 1 Paige, 412; *Leary* v. *Hutton*, 12 N. Y. Supp. 477; 129 N. Y. 649; *Carr* v. *Ellison*, 20 Wend. 178; *Muhlenbrinck* v. *Pooler*, 40 Hun, 526; *Tritton* v. *Foote*, 2 Brown's Ch. 636; *Cunningham* v. *Pattee*, 99 Mass. 248.)

*William G. Choate* for respondents.

Gray, J. The appellants' counsel, in contending that it was absolutely optional with his clients to grant an additional term to the respondents, has made an ingenious argument, which he bases upon the apparent incompatibility of a construction of the last clause in the lease, which would make their right to elect contingent upon what the owners might elect in respect to a new lease to them, with the right to elect, previously given to them in the body of the lease, to terminate the tenancy in 1891. We think the inconsistency is more apparent than real, and that a careful consideration of the lease to the plaintiffs, in connection with the principal lease by the society, and with all the circumstances, renders it sufficiently clear that the last clause was intended to qualify the option which had preceded. Beard's lease, in 1849, from the society gave him an absolute right to a renewal of that lease, if he had complied with the agreements therein on his part; but left it optional with the society, at the expiration of such renewal term, to grant a further, or third, lease, and, again, at the expiration of the third term, to grant a further, or fourth, term. Thus Beard was assured of forty-two years of lease, and might possibly hold the premises for eighty-four years in all, if the owners did not elect to terminate the holding and pay him the value of his improvements. Two years after obtaining his lease, Beard carved out of the leasehold estate a lesser leasehold estate in favor of Robinson and Woodruff; providing in the lease to them for a first term of nineteen years, and agreeing that they should have a further

term of twenty-one years, if they shall have complied with the conditions and covenants of the lease. The coterminous periods of time, and a similarity in provisions with the original lease, exhibit a plan to substitute his lessees in his place in respect to that portion of the leasehold estate; which the final clause, expressly extending to them such rights and privileges as he shall, at any time, acquire from the owners, makes indubitable. The leases are drawn with great precision and prevision, in the arrangement of the future relations of the parties and in the definition of their relative obligations and duties; and it is very evident that, in drawing the first renewal lease of 1870 to Robinson & Woodruff, Beard's draughtsman followed as his model for covenants and conditions the first lease of 1851. In this way, doubtlessly, occurred inadvertently the insertion of the exception as to further renewals, when providing for a new lease with like covenents, etc., as were thereinbefore contained; when there was no prior covenant for renewal. The premises leased by the society consisted of lands bordering upon and under water, which were to be improved and reclaimed by the lessees. The lessors were benefited by an arrangement, under which their waste lands would be made profitable to them; while to the lessees were assured such a quality and certainty of interest as to warrant the investment of his capital in the improvement of the land. In the execution of his projects, he makes a lease to others of a portion of the estate; which contemplates the improvement of the property by his lessees, and which apparently secures to them the same quality and certainty of interest, as had been assured to him in the enjoyment of his estate. Considering the circumstances alluded to, in the situation of the land, and the scheme of the lease, by which a profit was contemplated through a very long leasehold, it is perfectly evident that Beard intended to give to Robinson and Woodruff the same advantages and opportunities with respect to the property as he possessed, and gave legal expression to that intention by a clause, which practically substituted them in his place under any grant of rights and privileges, in rela-

tion to renewals, or to use, which the owner of the property might at any time make. If we deny to that emphatic clause the force which its plain reading conveys, it seems absolutely useless. The appellants' counsel says that, because the language used is "rights and privileges in regard to a renewal of the lease," a renewal was not intended and that the lessor must be deemed to have referred to the terms, conditions, or compensation, to govern if he should permit a renewal of the lease. We cannot agree to so refine away its meaning. The agreement therein expressed is as to "any rights or privilege at any time granted   *   *   *   in regard to the renewal of the aforesaid lease   *   *   *   or in relation to the use and enjoyment of the said premises." This language is not ambiguous. Its reasonable construction is to give to it a two-fold reference; the expression of the intention that not only shall the grant by the owners of the future terms inure to the benefit of the sub-lessee, but, also, any future enlargement by them of the right to use and enjoy the property. Such a construction is not only reasonable, but it is in accord with that just view of the transaction which seeks to give effect to every fair agreement of the parties, and deduces their intent from a consideration of the circumstances and from a fair reading of the instrument. Nor does such a construction of this last clause in the lease operate to nullify the option previously given to Beard in his lease, to refuse a further term and to pay the value of the buildings. It operates to qualify it; so that, if Beard should obtain from his lessors the grant of another term of lease, he could not elect to terminate his sub-letting to Robinson and Woodruff. If his lessors should elect to determine their lease to him, then Beard could exercise his election to terminate the holding of his sub-tenants, pay them the value of their buildings, and obtain from his lessors that value, in addition to the other values they would be liable to pay as a condition of the termination of the tenancy. The lease might have been drawn in clearer terms in these respects; but that is no reason for refusing to give effect to an agreement on the lessor's part so obviously desirable and beneficial to the lessees, as to suggest that

it was a dominant inducement for the lease. It is right that the construction should be strictly against the lessor in such a case; for thereby a perfectly just result is reached, which is in accord with the circumstances and probabilities of the case. In the construction of this, as of every other instrument, it is not a question of whether better and apter language could have been used, to express the intentions of the parties; but whether they are so clearly inferable from the whole instrument as to outweigh the difficulties arising from the inartificial, and possibly inadvertent, use of words and phrases and a nicety of reasoning to prevent their effectuation.

From a careful consideration of the lease to the plaintiffs' predecessors in interest, we think the only and proper construction is, that the right of election in Beard with respect to granting a new lease to plaintiffs was qualified by the subsequent and last clause of the lease. That must govern the relations of the parties and entitles the sub-lessees to as many new terms of lease as their lessor shall obtain from the owners of the property by virtue of the covenants in their lease to him.

A more elaborate discussion of this case is unnecessary.

In our judgment, the conclusions of the court below were right, and the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.