HAUSAUER et al. v. DAHLMAN et al.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

LANDLORD AND TENANT—SUBLEASES—COVENANT TO RENEW.
    A lessee who sublets part of the premises with the privilege of renewal for
    a certain term in case he obtains from the superior landlord an extension
    of his lease is not relieved from his covenant because he obtained from the
    superior landlord a new lease, instead of an extension of the old one.

Appeal from special term, Erie county.

Action by Charles A. Hausauer and another against Sarah Dahlman and others. From a judgment adjudging that defendants were not entitled to damages against plaintiffs for retaining possession of leased premises from May 1, 1892, to May 1, 1895, defendants appeal. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Simon Fleischmann, for appellants.
Adelbert Moot, for respondents.

FOLLETT, J. This action was begun April 27, 1893, to restrain the defendants from prosecuting summary proceedings against the plaintiffs to remove them from the possession of certain premises, the plaintiffs alleging that they were lessees, and entitled to the possession of the premises until May 1, 1895. The defendants alleged, by way of defense and counterclaim, that the plaintiffs' term as lessees expired May 1, 1892, and that since that date they had wrongfully withheld possession of the leased premises, to the defendants' damage in the sum of $1,000 for each year. The defendants also alleged, by way of counterclaim, that the plaintiffs, by wrongfully holding over, were liable for "double the yearly value of the lands or tenements so detained pursuant to statute." 1 Rev. St. pt. 2, c. 1, tit. 4, § 11; 5 Rev. St. (9th Ed.) p. 3575, § 200. The plaintiffs retained possession until May 1, 1895. This action was tried May 7, 1896, was decided July 11, 1896, and judgment was entered July 29, 1896.

By reason of the discontinuance of the summary proceedings to dispossess the plaintiffs, and by the expiration of the term during which they claimed to hold before this action was tried, the only question involved herein is whether the plaintiffs wrongfully withheld from the defendants the premises from May 1, 1892, to May 1, 1895. The defendants insisted on the trial and on this appeal that the plaintiffs' term was not extended beyond May 1, 1892, because (1) the defendants' lease from the owner of the fee was never extended beyond May 1, 1891, but a new and different lease was taken; and (2) because the plaintiffs failed to give on or before February 1, 1891, the defendants written notice of their election to have their lease

extended for four years from May 1, 1891. From May 1, 1865, to May 1, 1885, the defendants were lessees in possession, under a written lease, under seal, of a piece of real estate situate on the west side of Main street, in the city of Buffalo, which is 43½ feet wide north and south on said street, and 80 feet deep east and west. By contract, under seal, executed June 18, 1884, between the owner of the fee and the defendants, said lease was extended for five years, until May 1, 1890, at the annual rent of $3,500, payable in equal quarterly payments.. By the lease it was provided that the lessor, at the end of the term, should pay the lessees the value of the buildings then standing on the premises, to be determined, in case the parties disagreed, by the assessors of the city of Buffalo. By contract, under seal, dated March 13, 1890, said lease was extended until the 1st day of May, 1891. On the premises was a building erected by the defendants, which was divided into two stores, numbered 388 and 390 Main street. March 12, 1890, the litigants entered into a contract, under their hands and seals, by which the defendants leased to the plaintiffs "the store known as 'Number 390 Main street,' with basement, for the term of one year, to commence on the first day of May, 1890, and to end on the first day of May, 1891, at eight o'clock in the forenoon. The said party of the second part (plaintiffs) agrees to pay to the said party of the first part (defendants) the annual rent of twenty-five hundred dollars ($2,500) in monthly payments, with the privilege of renewing this lease at its termination for four years longer, at the same annual rent, and on the same conditions, provided that the said party of the first part (defendants) will receive an extension of their lease, at its termination, and that the said party of the second part (plaintiffs) shall, at least three months before the expiration of this lease, notify the parties of the first part (defendants) in writing, of his intention of renting said premises for such additional term." It will be observed that the lease from the owner of the fee under which the defendants held, and the lease under which the plaintiffs held from the defendants, both expired May 1, 1891. The defendants were unable to obtain an extension of their old lease, or a new lease, from the owner of the fee during 1891, by reason of a disagreement which arose between them. Nevertheless, the defendants continued in possession, and paid to the owner of the fee the rent stipulated in the old lease until May 1, 1892, and the plaintiffs held possession under their lease from the defendants until May 1, 1892, paying the stipulated rent. During the year ending May 1, 1892, the defendants gave, and the plaintiffs received, receipts for rent paid, by which the plaintiffs acknowledged that they occupied "said premises as tenants at will or by sufferance." The purpose of these receipts was evidently to protect the defendants from a claim for damages in case they and their sublessees should be evicted by the owner of the fee, because a new lease, or an extension of the old one, had not been granted by such owner. Negotiations were had during 1891 between the owner of the fee and the defendants in respect to a new lease, which resulted in the execution and delivery on or about February 12, 1892, of a new lease, by which the owner of the fee leased to the defendants the premises for 10 years

from May 1, 1891, at an annual rent of $3,500 for the first five years, and at an annual rent of $4,000 for the last five years of the term, payable in equal quarterly payments, and at the expiration of the term the buildings on the premises were to belong to the owner of the fee. By a lease executed February 12, 1892, the defendants leased the entire building, Nos. 388 and 390 Main street, to the C. M. Clapp Company, for nine years from May 1, 1892, at an annual rent of $9,000 for the first four years, and at an annual rent of $9,500 for the last five years of said term. March 29, 1892, the defendants served a written notice upon the plaintiffs, requiring them to quit and surrender possession of No. 390 Main street, on May 1, 1892. The plaintiffs refused to quit, and November 18, 1892, the defendants began summary proceedings in the municipal court of Buffalo to dispossess the plaintiffs on the ground that their term had expired. Thereupon this action was begun, and a temporary injunction granted, restraining the prosecution of the summary proceedings in the municipal court. A motion to vacate the injunction was denied at special term, but on appeal the order was reversed, and the injunction vacated. 72 Hun, 607, 25 N. Y. Supp. 277.

By a stipulation entered into between the litigants, it was agreed that the plaintiffs should pay, and the defendants receive, monthly payments on account of rent at the rate stipulated in the lease, without prejudice to the rights or claims involved in this action, under which the plaintiffs paid, and the defendants received, rent at the rate of $2,500 per year, until May 1, 1895, when the plaintiffs surrendered possession of the leased premises to the defendants. At the date of the lease between the litigants, the defendants were holding under a lease from the owner of the fee for a year, which expired May 1, 1892, and on the same date that the lease between the litigants expired; and the defendants contend that, because they did not secure a renewal of their outstanding lease, they were not bound by the renewal clause in the lease between the litigants to renew that lease. It is apparent that when the litigants executed the lease of March 12, 1890, for one year, they did not contemplate that the defendants were to obtain from the owner of the fee what is technically known as a "renewal lease," which would have been for one year, because it is provided in the renewal clause above quoted that the plaintiffs' renewal was to be "for four years longer,"—four years from May 1, 1891. This provision was evidently inserted upon the mutual expectation that the defendants would not obtain simply a technical renewal of their lease for one year, but would obtain a new lease for a term of sufficient length to enable them to extend the plaintiffs' term for four years from May 1, 1891. The lease between the litigants cannot be construed to mean that the defendants were not bound to extend the plaintiffs' term for four years, unless the defendants secured from the owner of the fee a technical renewal of the lease then outstanding. The terms of the renewal clause, read in the light of the surrounding circumstances, make it apparent, I think, that the parties did not intend that the right of the plaintiffs to a four-years extension should be dependent upon the defendants securing a renewal of their lease then outstanding with the owner of

the fee, but was to be dependent upon their securing a lease from the owner of the fee for a period sufficient to enable them to extend the plaintiffs' term for four years, which they actually succeeded in doing. In case a lessee enters into contractual relations with a third party in respect to the subject of the lease, and afterwards obtains a renewal or a new lease, the renewal or the new lease will be deemed an extension of the original term, as between the lessee and the third party, if it be necessary for the protection of the rights of the third party. In case a lessee mortgages his term for years, and afterwards, instead of obtaining a renewal, takes a new lease for three lives, his new lease is subject to the mortgage. Smith v. Chichester, 2 Dru. & War. 393, 1 Connor & L. 486; White & T. Lead. Cas. Eq. (3d Am. Ed.) 84–97; 1 Platt, Leas. 762 et seq.; Wood, Landl. & Ten. 680. The defendants were not relieved from their covenant to extend the plaintiffs' term for four years because they obtained a new lease, instead of a technical renewal of their old one.

The court found, and the fact was not disputed on the trial, that the plaintiffs did not, at least three months before the expiration of their lease, notify the defendants in writing that the plaintiffs elected to continue their lease for four years. The defendants contend that the failure to serve this written notice bars the claim of the plaintiffs that their term was extended. When the time for serving this notice arrived, the defendants had not secured an extension of their lease or a new lease from the owner of the fee, and the renewal clause provides that a notice would not extend the plaintiffs' term unless the defendants' should be extended. It was testified on the trial that the plaintiffs talked with the defendants about an extension for four years in case they obtained an extension, and that the defendants promised so to extend the term. The trial court found as a fact, and I think upon sufficient evidence, that the defendants waived the service of this notice, because the owner of the fee had not, when the time arrived for its service, granted them a new lease, and the term of the defendants was consequently uncertain. It was competent for the defendants to waive service of the written notice, orally or by acts. Long v. Stafford, 103 N. Y. 274, 8 N. E. 522.

The judgment should be affirmed, with costs. All concur.