F. C. Sharp v. A. B. Williams.

192 So. 476
Special Division B
Opinion Filed December 5, 1939
Rehearing Denied January 2, 1940

2

*Milam, McIlvaine & Milam,* and *Harry Katz,* for Plaintiff in Error;

*John E. Mathews,* for Defendant in Error.

PER CURIAM.—On July 21, 1938, plaintiff below, A. B. Williams, filed in the Circuit Court of Duval County, Florida, his amended declaration consisting of five counts. The case was submitted to the jury on counts 1, 2 and 3 of the amended declaration. The material allegations of counts 1 and 3 are, viz.: On December 14, 1935, F. C. Sharp was a slot machine owner and A. B. Williams was a slot machine operator, and by a written agreement the parties contracted to operate slot machines at 201 Main Street, Jacksonville, Florida, and elsewhere in said city. Sharp under the terms of the agreement, was to furnish the slot machines and Williams was to pay the rent for the location. The agreement ended September 30, 1936, but a clause thereof provided that the same would be automatically extended for a period of one year from the expiration date

thereof. Sharp made a sub-lease to Williams for the premises, which sub-lease expired on the 31st of May, 1937, the date of the expiration of Sharp's lease. Sharp and Williams were obligated to each other by the written agreement to operate the slot machine business until September 30, 1937, being a period of four months after the expiration of the lease and sub-lease on the building situated at 201 Main Street. The written agreement was not to be breached by either party thereto, but each term was to be faithfully executed by each of them. The owner of the premises was ready, able and willing to renew the lease to Sharp from June 1 to October 1, 1937, and Williams was ready, able and willing to pay the rentals named; but Sharp refused to take a renewal of the lease in his own name for said period when the owner was ready, able and willing to lease the property to Sharp, provided Williams would sign a release, or to Williams if Sharp would sign a release. Sharp refused or declined to sign and otherwise carry out the terms of his written agreement with Williams and thereby made it impossible for Williams to either obtain a release or continue in the slot machine business, and because of the breach of said agreement Sharp is liable to Williams for damages.

The second count of the amended declaration alleges facts substantially as set forth in the first and third counts, *supra,* with the additional allegation that the defendant, acting in bad faith and in violation of his duties to the plaintiff, conspired with one Ed. Bazar and furnished the money wherewith Bazar leased or rented the property for four additional months from the owner, and after the plaintiff was put out of possession the defendant, through Bazar, continued to operate the business.

The written agreement between Sharp and Williams is, viz.:

"Articles of Agreement, Between F. C. Sharp hereinafter called Operator and A. B. Williams a corporation) a partnership) composed of ......................... and ........................., hereinafter called Location Operator, Witnesseth:

"Whereas, said Operator is the owner of Coin Operated Machines or Devices, and said Location Operator operates a place or places of business at the storeroom or storerooms hereinafter described.

"The term 'he' wherever used hereinafter shall include and refer to a corporation, co-partners, or an individual, as the case may be; the word 'period' wherever used hereinafter shall mean and include the period of time hereinafter specified, as well as any extension or renewal thereof; the word 'storeroom' wherever used hereinafter shall include one or more than one storeroom as the case may be.

"In Consideration of the mutual and several promises on the part of the parties hereto hereinafter contained, said Location Operator hereby agrees with said Operator that for and during the period commencing December 14, 1935 and ending September 30, 1936 at midnight he will use, install, and/or operate at the storeroom operated by said Location Operator, to-wit:

| | |
|---|---|
| 2-1 Main Street | 528 Main Street |
| 401 Main Street | all of said stores being located in |
| 303 West Duval Street | Jacksonville, Florida |

the coin operated machines and devices of said Operator, exclusively, and of no other person, firm, or corporation, including said Location Operator; that in the operation of said machines and devices he will operate the same in accordance with all reasonable rules and regulations imposed

by said Operator, and will not intentionally violate any City, County, State, or Federal Law, Ordinance, or Regulation; except that the Location Operator may operate such marble tables as said Operator cannot or shall not furnish and supply.

"Said Operator agrees with said Location Operator that he will furnish and supply as many coin operated machines and devices at each of said storerooms during said period as each of said storerooms severally shall reasonably require.

"Said Operator further agrees that he will at his expense service and keep in good repair all machines placed by him and kept in said storeroom during said period.

"It Is Mutually Agreed that after first deducting from the proceeds from the machines placed in said storeroom the City, County and State License Fees, the parties hereto shall share and divide equally between themselves the net profits as shall arise from the operation of said machines and devices operated in said storeroom during said period, that is to say, 50% thereof to the Operator and 50% thereof to the Location Operator; in addition to said 50% to the Location Operator, the Operator will pay the Location Operator Three Hundred ($300.00) Dollars monthly in advance. Said Location Operator agrees that he will exercise reasonable care for the protection of said machines and devices of said Operator, and upon the termination of this agreement, whether by expiration of time, or otherwise, will permit said Operator to peaceably enter and repossess himself of all of his said machines and devices in any of said storerooms.

"This agreement shall be automatically extended for a period of one (1) year from the expiration date hereof, and for and from year to year thereafter, unless either of

the parties shall give the other not less than sixteen (16) days notice to the contrary prior to the expiration of the period hereinabove specified, or any of such annual extensions and renewals.

"EXECUTED in duplicate by the parties hereto this 14th day of December, A. D. 1935."

The defendant on October 14, 1938, filed pleas to counts 1, 2 and 3 of the amended declaration, and the case was submitted to the jury on pleas, viz.: (1) defendant denies that the owner of the storeroom had agreed during May, 1937, or prior thereto, to lease said store to the defendant for an additional four months; (2) denies that the owner of the storeroom, during the month of May, 1937, or prior thereto, was willing to lease the same to plaintiff if the defendant would release the owner from any supposed obligation to the defendant by reason of any supposed prior promise or agreement to lease the property to the defendant; (5) the defendant denies that the owner of the store, during the month of May, 1937, agreed to lease the same to defendant for four additional months after May 31, 1937; (6) denies that the owner of the store was willing to lease the same to the plaintiff; (9) defendant denies that he, by or through Ed Bazar, operated the storeroom at 201 Main Street, Jacksonville, in violation of any duties to the plaintiff under the contract sued upon; (11) the defendant denies that the owner agreed to lease the storeroom to the defendant for four months after May 31, 1937; (12) defendant denies that the owner was willing to lease the storeroom to the plaintiff, if the defendant would release the owner from any supposed obligation to the defendant; (13) the defendant denies that the owner of the store, during the month of May, 1937, or prior thereto, agreed to lease said storeroom to the plaintiff, if this defendant would release

the owner from any supposed obligation to the defendant for the reason of any supposed prior agreement. The 4th, 10th, and 15th pleas as amended allege it became the obligation of the plaintiff to furnish the storeroom, under the terms of the written agreement sued upon, during the additional four months' period after May 31, 1937, and that plaintiff failed to provide the storeroom; and defendant denies that failure on the part of the plaintiff to secure said storeroom was due to any supposed agreement between the owner of the store and the defendant for the period of four months after May 31, 1937, and that the defendant refused to take a lease in his own name and refused to release the owner from any obligation for this reason plaintiff breached the contract sued upon, thereby discharging the defendant; (19) that at the expiration of the sub-lease from the defendant to the plaintiff to the storeroom at 201 Main Street from the 31st of May, 1937, the owner of the storeroom compelled the plaintiff to vacate the same; that plaintiff was not compelled to vacate the property at the expiration of the sub-lease because of any lease or leases between the owner of the store and the defendant, but because the owner of the storeroom was unwilling and refused to lease said storeroom to the plaintiff during the additional four months after May 31, 1937.

On January 6, 1939, a verdict was rendered for the plaintiff and his damages assessed at $12,000.00. A motion for a new trial was made and overruled and a final judgment entered on the verdict. A writ of error was sued out, an appeal perfected and the case is here for review on a number of assignments of error.

On August 10, 1938, a defendant filed a motion for compulsory amendment, a motion for a bill of particulars and a demurrer directed to counts 1, 2, 3, 4 and 5 of the amended

declaration. The same under date of September 30, 1938, were by the trial court in part overruled or denied. It is contended here that this order was reversible error. The grounds of the demurrer to each count severally are, viz.:

"1. Said count does not state sufficient facts to constitute a cause of action.

"2. Said count states mere conclusions of pleader.

"3. In said count there has occurred a departure in pleading.

"4. No breach of contract by defendant is. alleged in said count.

"5. It affirmatively appears from said count that the defendant acted within his legal rights in doing the alleged things complained of.

"6. Said count shows upon its face that the impossibility of performance of said contract by plaintiff during the additional four months period was due to his own failure or inability to provide for a leasing or letting of the premises in question at or before the expiration of the alleged sublease.

"7. Said count shows upon its face that the alleged lessor had imposed upon the defendant before agreeing to a lease with the defendant for the additional four mouths period, which conditions were not required by the terms of said contract to be performed by defendant.

"8. There was no duty on the part of defendant to take a lease to the premises in question during the additional four months period in his own name, or to release the owner of said premises from any obligation to the defendant.

"9. In said count the alleged duty on the part of the defendant is erroneously stated by the plaintiff.

"10. It is not alleged nor does it affirmatively appear

from said count that there was any legal duty or obligation on the part of the owner of said premises to lease the same for the additional four months period."

The sufficiency of allegations of counts, *supra*, to state a cause of action for breach of contract is raised by the demurrer, *supra*, and it is our duty to review some of the fundamental principles of contracts.

A contract includes not only the things written, but also terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken. See C. F. Browser & Co. v. Marks, 96 Ark. 113, 131 S. W. 334, 32 L. R. A. (N. S.) 429, Ann. Cas. 1912B 357; 12 Am. Jur. 765. This same principle has been stated in McGill v. Cockrell, 88 Fla. 54, 101 So. 199, as follows:

"And what the law implies, from the relation of parties created by an express agreement, is as much a part of the contract as that which is expressed. Bishop on Contracts (2d Ed.), Sections 241, 242, 256; Churchward v. The Queen, 1 L. R. Q. B. 173; Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall (U. S.) 276, 19 L. Ed. 349."

Williston, in his authoritative work on Contracts, Vol. II, Section 677, page 1308, makes the following statement:

" 'When a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing that thing' (Gay v. Blanchard, 32 La. Ann. 497, quoted with approval in Patterson v. Meyerhofer, 204 N. Y. 96, 97 N. E. 472); and indeed if the situation is such that the cooperation of one party is an essential prerequisite to performance by the other, there is not only a condition implied in fact qualifying the promise of the latter, but also an implied promise by the former to give the necessary cooperation."

And the Restatement of the law of Contracts, Section 315, lays down the following principle:

"Prevention or hinderance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract * * *."

There are two notable exceptions to this rule, but we are not concerned with those here. This principle, as stated, is controlling in the instant case and is supported by competent authority. See Walker v. Chancey, 96 Fla. 82, 117 So. 705, and cases there cited; Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 265, 28 L. Ed. 423, 4 Sup. Ct. 390; United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; Kress House Moving Co. v. George Hogg Co., 263 Pa. 191, 106 Atl. 351.

Having thus established these principles, it is readily seen that the amended declaration stated a cause of action against Sharp for breach of contract, and in view of the fact that a lessee who sublets a portion of the premises with the privilege of renewal for a specified term in case he obtains from the original lessor an extension of his lease is bound by his covenant when he secures a new lease instead of an extension. (Hausauer v. Dahlman, 45 N. Y. Supp. 1088, 18 App. Div. 475, affirmed in 163 N. Y. 567, 57 N. E. 1111. We therefore hold that counts 1, 2, and 3 of the declaration, *supra,* state a cause of action.

The record shows that at the conclusion of the taking of testimony by the parties, the defendant moved the court for a directed verdict upon several grounds, one being that the plaintiff failed to establish by a preponderance of the evidence the material allegation of the declaration that the

Cloverleaf company was ready, able and willing to make a lease to Williams and before the termination of the Williams tenancy, Sharp arranged to take the tenancy in the name of Bazar. We have read the evidence as found in the record and hold that there was sufficient evidence to be considered by the jury in reaching its verdict upon the point raised. It is an established rule of this Court that if the evidence is conflicting, or will admit of different reasonable inference, or if there is evidence tending to prove the issues, it should be submitted to the jury as a question of fact to be determined by them, and not taken away from the jury and passed upon by the court as a question of law. See Cameron, etc., Co. v. Law-Engle Co., 98 Fla. 920, 124 So. 814; McKinnon v. Johnson, 57 Fla. 120, 48 So. 910; Starks v. Sawyer, 56 Fla. 596, 47 So. 513; Florida Cent. etc., R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Southern Exp. Co. v. Williamson, 66 Fla. 286, 63 So. 433, L. R. A. 1916C 1208; Bass v. Ramos, 58 Fla. 161, 50 So. 945, 138 Am. St. Rep. 105; Wood Lbr. Co. v. Gipson, 63 Fla. 316, 58 So. 364; Paul v. Commercial Bank, 69 Fla. 62, 68 So. 68; Johnson v. Louisville, etc., R. Co., 59 Fla. 305, 52 So. 195; Williams v. Sherry, 94 Fla. 998, 114 So. 849; German-American Lbr. Co. v. Brock, 55 Fla. 577, 46 So. 740; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121, 56 So. 496. See also King v. Cooney-Eckstein Co., 66 Fla. 246, 63 So. 659, Ann. Cas. 1916C, 163; Gunn v. Jacksonville, 67 Fla. 40, 64 So. 435; Davis v. Ivey, 93 Fla. 387; 112 So. 264; Florida East Coast Ry. Co. v. Hayes, 66 Fla. 589, 64 So. 274; Jacksonville v. Glover, 69 Fla. 701, 69 So. 20; Gravette v. Turner, 77 Fla. 311, 81 So. 476; Gulf Refining Co. v. Ankeny, 102 Fla. 151, 135 So. 521.

It is next contended that the lower court erred in overruling and denying the defendants motion for a new trial. We

have carefully considered the evidence and the grounds of the motion for a new trial, and do not think or believe that reversible error was committed when the lower court overruled said motion.

We have examined the entire charges or instructions given by the trial court in light of the argument and authorities appearing in the briefs, and, taking the instructions or charges as a whole, we fail to find reversible error.

We have carefully considered the issue made by the pleadings, the evidence offered in support thereof by the respective parties, the charges or instructions given by the trial court to the jury, the briefs and authorities cited by counsel, and after hearing oral argument at the bar of this Court, we have concluded that no reversible error appears in the record.

The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.