116 So.2d 600

MORGAN PLAN CO., Inc.

v.

Manuel VELLIANITIS et al.

1 Div. 830.

Supreme Court of Alabama.

Dec. 17, 1959.

Caffey, Gallalee & Caffey, Mobile, for appellant.

Thornton & McGowin, Mobile, for appellees.

MERRILL, Justice.

This is an appeal from a decree sustaining a demurrer to a bill filed by Morgan Plan Company, appellant, against Manuel and Penelope Vellianitis, appellees, seeking a declaration of rights under certain leases and a sublease. The following is a drastic condensation of the allegations of the bill.

Helen R. Meaher leased the Greystone Building to Manuel Vellianitis in 1949, for a primary term of 132 months, ending October 31, 1960. The lease contained an option to renew for an additional term of ten years and a further option for an additional third ten-year term. Shortly after securing this lease, Vellianitis executed a sublease to a portion of the office building to Morgan Plan Company. It was also for a primary term of ten years and contained an agreement that Morgan Plan should have the same rights and privileges of renewal as were accorded Vellianitis by Helen R. Meaher.

In 1956, Morgan Plan gave the Vellianitises notice in writing of its election to renew the lease for an additional ten years, beginning in 1960.

It is then alleged that after receipt of the notice, the Vellianitises began negotiations for a modification of the lease; that they organized a corporation named Blackstone Realty Company and caused the corporation to be named as lessee in the modified lease. This new lease was dated January 1, 1958. It is alleged that there is very little difference in the new lease and the old lease but that it is actually a scheme on the part of the Vellianitises to escape their contractual obligations with the Morgan Plan Company, and that Blackstone took the modified lease with full knowledge and notice of the terms of the sublease from the Vellianitises to Morgan Plan and was a party to the efforts to evade the trust and obligations created by the sublease in favor of Morgan Plan.

It is also alleged that appellees have denied the right of Morgan Plan to a renewal of its lease for the additional term of ten years, claiming that the execution of the new lease defeats appellant's right to renewal.

All the leases are made exhibits to the bill.

It is also alleged that an actual justiciable controversy exists between the parties over the effect of the three leases, particularly over the legal effect of Exhibit F (the lease between Helen R. Meaher and Blackstone).

The bill prays for a declaratory decree that Exhibit F does not have the effect of terminating or defeating appellant's right to a renewal and that the court decree that appellees make the renewal.

We agree with appellant's statement of the question as follows:

"The primary question, presented by the pleadings in this case is whether a lessee of an office building for a primary term of 10 years with option to renew for an additional 10 years, after making a sublease of a portion of the leased premises for ten years with the option in sublessee to renew for an additional ten years, can evade the obligation of his contract to renew his sublease by voluntarily taking a new and somewhat modified lease on the same property. A secondary question is whether he can accomplish such evasion, by indirection, by creating a corporation and taking the modified lease in its name, when the corporation as his creature is fully aware of the right of the sublessee to renew."

■ Ordinarily, where a bill for a declaratory judgment shows a bona fide justiciable controversy which should be settled, a demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper on submission for final decree. City of Bessemer v. Bessemer Theatres, 252 Ala. 117, 39 So. 2d 658; Mobile Battle House v. City of Mobile, 262 Ala. 270, 78 So.2d 642.

However, where both sides have argued the case on the basis that a construction of an instrument is required, and seem desirous of such an interpretation, as here, we proceed to consider the matter even when here on appeal on demurrer. McCall v. Nettles, 251 Ala. 349, 37 So.2d 635.

In City Garage & Sales Co. v. Ballenger, 214 Ala. 516, 108 So. 257, we held that the lease of real estate for a term of years, reduced to writing and signed by the parties, passes an interest or estate in lands. Here, Morgan Plan had, for a valuable consideration, been granted an option to renew the sublease on the same terms that the lessee, appellees, could renew the lease from the owner.

■ The primary question has not been directly decided in this State but the rule seems to be in such cases that the original lessee and sublessor cannot evade his obligation to renew the sublease at the instance of the sublessee if he (the lessee) renews his lease in accordance with the terms of the original lease or takes a new lease contract where the terms of the sublease have given the sublessee a similar option in the event that the lessee renews. 127 A.L.R. 953; 32 Am.Jur., Landlord and Tenant, § 986; 51 C.J.S. Landlord and Tenant § 58c.

In Risk v. Risher, 197 Miss. 155, 19 So.2d 484, 486, it was held that a fiduciary relationship was created, the court saying:

"The mere relation of landlord and tenant alone is not such a (fiduciary) relation. Something more is needed. Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 P. 697, 75 A.L.R. 840; Annotation, L.R.A.1918C, 1052; 32 Am.Jur. 835, Sec. 991; Annotation, 75 A.L.R. 848. But, on the other hand, the relation is not restricted to such confined relations as trustee and beneficiary, partners, principal and agent, guardian and ward, managing directors and corporation, etc. Davis v. Hamlin, 108 Ill. 39, 48 Am.Rep. 541; Cushing v. Danforth, 76 Me. 114; 32 Am.Jur. 835, Sec. 991; Probst v. Hughes, 143 Okl. 11, 286 P. 875, 878, 69 A.L.R. 929. It applies to all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise. 'It is the nature of the relation which is to be regarded, and not the designation of the one filling the relation.' Davis v. Hamlin, supra. In the Probst case, supra, the Court said: ' * * * a trusteeship may arise by virtue of any relationship of the parties in which it may be said that the one occupying the position of trustee is in duty bound to act in the utmost good faith for the benefit of the other.' In 32 Am.Jur., supra, it is said, 'The doctrine of implied trusts arising out of renewals applies to fiduciaries of practically every description,' and 'It has been said broadly that no one who is in possession of a lease or a particular interest in a lease which is affected with any sort of equity in behalf of third persons can renew the same for his own use only, but such renewal must be construed as a graft upon the old stock.' In Trice v. Comstock, 8 Cir., 121 F. 620, 61 L.R.A. 176, 57 C.C.A. 646, the Court said: 'Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with

him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.'"

Other cases quoting and applying the principle quoted from Trice v. Comstock, supra, are: Clement v. Cates, 49 Ark. 242, 4 S.W. 776; Johnson v. Knappe, 24 S.D. 407, 123 N.W. 857; Parks v. Brooks, 188 Mich. 645, 155 N.W. 450; Wood v. White, 123 Me. 139, 122 A. 177; Testerman v. Burt, 143 Okl. 220, 289 P. 315; Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077.

■ Applying these principles here, the Meaher-Vellianitis lease gave Vellianitis the right to renew and the unqualified right to sublease. The Vellianitis-Morgan Plan lease gave Morgan Plan the right to renew to the same dates Vellianitis had under the original lease. The sublease not only vested rights but it imposed obligations. The Vellianitises were obligated to renew the sublease if the original lease should be renewed. The sublessee, Morgan Plan, having notified the sublessors, the Vellianitises, of its option to renew within the time prescribed by the sublease, a duty was cast upon appellees to perform the contract they had made with appellant when they renewed their lease with Helen R. Meaher.

We find no conflict in the authorities from other jurisdictions on this question. Some of the other cases so holding are: Puetz v. Cozmas, Ind.App., 142 N.E.2d 635; Horn & Hardart Co. v. 115 East 14th Street Co., Sup., 7 N.Y.S.2d 688; Hotel Allen Co. v. Allen's Estate, 117 Minn. 333, 135 N.W. 812; Winestine v. Rose Cloak & Suit Co., 93 Conn. 633, 107 A. 500; Brummitt Tire Co. v. Sinclair Refining Co., 18 Tenn.App. 270, 75 S.W.2d 1022; Robinson v. Beard, 140 N.Y. 107, 35 N.E. 441; Cohen v. Rosen, 157 Va. 71, 160 S.E. 36.

■ But appellees argue that the sublease gives the right to cancel for any reason. This is based upon Article VII of the sublease which refers to the sublessor as lessors and the sublessee as lessee, and reads:

"In the event that this lease is cancelled by the Lessors for any reason or terminates for any reason, the cancellation or termination of said leasehold interest of the Lessee shall automatically terminate any right that the Lessee may have had under the terms of this lease, to renew the lease for an additional term or terms."

We cannot agree with appellees' contention. Article VII is identical in language with Item Sixteen of the Meaher-Vellianitis lease. Both the lease and the sublease call for the monthly payment of rent, the carrying of insurance in stated amounts, and other items, which if not carried out, would cause the lease or the sublease to terminate. We do not construe Item Sixteen or Article VII as giving the original lessor or the sublessor a right to cancel for *any* reason, but that these sections merely define the full effect of the termination if cancelled for any of the reasons authorizing cancellation in the lease or sublease.

■■ We now come to the secondary question of whether the Vellianitises can evade the duty owed to appellant by creating a corporation and taking a slightly modified lease in its name when, according to the allegations of the bill "* * * the respondents, Manuel Vellianitis and Penelope Vellianitis, scheming and attempting to escape their contracted obligation to renew their said lease to complainant for the period from November 1, 1960 to and including October 31, 1970, caused said modified lease agreement with their lessor to be reduced to writing as a new and original lease, naming as lessee the respondent, Blackstone Realty Company, Inc., a corporation organized, owned and controlled by them. And complainant avers that said corporation was organized and was named as lessee in said modified lease as the creature of and for the use and benefit of respondents Manuel Vellianitis, and Pene-

lope Vellianitis, with the intent, and in an effort by them, to escape the aforesaid obligation of their lease contract with complainant, and in violation of their duties to complainant under said lease contract, * *." It is sufficient to say that a court of equity will look through form to substance and "will declare a corporate setup a sham or subterfuge where substantially all of its stockholders organized it for a personal purpose, subversive of the rights of others." Ex parte R. A. Brown & Co., 240 Ala. 157, 198 So. 138, 139; Appelbaum v. First National Bank of Birmingham, 235 Ala. 380, 179 So. 373; Forest Hill Corporation v. Latter & Blum, 249 Ala. 23, 29 So.2d 298.

Under the allegations of the bill, the creation of Blackstone Realty Company to take the new lease from Helen R. Meaher was merely a scheme on the part of the Vellianitises to escape their contractual obligations with appellant.

We attach little importance to the fact that Vellianitis did not renew his lease with Helen R. Meaher but took a new one in the name of Blackstone Realty Company. A lessee who sublets a portion of the premises, with the privilege of renewal for a specified term in case he obtains from the original lessor an extension of his lease, is bound by his covenant to the sublessee when he secures a new lease instead of an extension. Sharp v. Williams, 141 Fla. 1, 192 So. 476; Hausauer v. Dahlman, 18 App.Div. 475, 45 N.Y.S. 1088, affirmed 163 N.Y. 567, 57 N.E. 1111.

It is not necessary to discuss other points raised in briefs. The demurrer was sustained to the bill as a whole and if any aspect thereof was good, the court erred in sustaining the demurrer. Florence Gin Co. v. City of Florence, 226 Ala. 478, 147 So. 417; Cunningham v. Andress, 267 Ala. 407, 103 So.2d 722.

We have shown that the bill contained equity in that a justiciable controversy exists as to the construction of the leases made exhibits to the bill. In view of the above, the lower court erred in sustaining the demurrer and the decree must be reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.