(54 App. Div. 489.)

## McDONALD v. FISS et al.

(Supreme Court, Appellate Division, First Department. November 23, 1900.)

1. LANDLORD AND TENANT—ASSIGNMENT OF LEASE—RIGHTS OF ASSIGNEE.

A representation, in negotiations for a sale of a building and the assignment by the seller to the buyer of a lease of the lot on which it stood, that it was customary for the landlord to renew, does not constitute a contract on which a trust relation could be predicated, so as to require

the seller to give the buyer the benefit of a second lease made to the former after the assigned lease expired.

2. SAME—EXPIRATION OF TERM—NEW LEASE—RIGHTS OF LANDLORD.

At the expiration of the lease of a lot the landlord leased it for a specified purpose to a third party, who agreed not to sell, nor assign, nor underlet, nor suffer any other business than that mentioned in the lease to be conducted on the premises. *Held*, that he could not be required to make a new lease, and accept his former tenant as lessee, on account of the fraudulent procurement of the new lease as against the latter, the landlord not being a party to the fraud.

Appeal from special term.

Action by Michael F. McDonald against William Fiss and others to establish and enforce against defendants a trust in plaintiff's favor. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

John M. Bowers, for appellant.

Edward M. Grout and William H. Sage, for respondents.

RUMSEY, J. In 1891 the firm of Fiss & Doerr, dealers in horses, were in possession of a lot known as "No. 123 East Twenty-Fourth Street" under a lease from the trustees of the Lorillard estate, which would expire on the 1st of May, 1894. Fiss & Doerr were the owners of a building erected on the lot for their use. The plaintiff, who was also a horse dealer, paid to Fiss & Doerr $1,000 for their interest in the building and for an assignment of the lease. Before he made the purchase, he was told by them that the lease expired on the 1st day of May, 1894, but that it was a Lorillard lease, and, as long as he paid the rent, he could stay there. These representations were believed by Fiss & Doerr to be true, and were true so far as that the trustees of the estate were in the habit of renewing leases, but they made no covenant to do so. McDonald went into possession of the premises under his assignment, and the lease, which expired on the 1st day of May, 1894, was renewed for three years, and until the 1st of May, 1897. Before the expiration of the term of this second lease he procured another renewal, which expired on the 1st of May, 1900. In 1895 the firm of Fiss & Doerr was dissolved, and the two partners and other persons in the same business united in the formation of the Fiss, Doerr & Carroll Horse Company, a corporation organized to carry on the same business that Fiss & Doerr and the other members had been engaged in. The business of the company was carried on in the same neighborhood where the plaintiff's establishment was situated. Before the expiration of the plaintiff's lease on the 1st of May, 1900, the horse company took from the Lorillard estate a lease of all of the property contained in the block in which the land leased to the plaintiff was situated, including the lot he was then occupying under his lease. The plaintiff applied to the Lorillard estate for a renewal of his lease, which was refused, because the property had been leased to the horse company. Thereupon this action was brought against Fiss & Doerr and the horse company and the trustees of the Lorillard estate to procure a judgment that the horse company

took the lease charged with a trust for the plaintiff, that they held it for his benefit, and that he should be entitled to the privileges of the lease upon entering into a covenant to comply with its terms. The horse company appeared, and put in issue the allegations of the complaint, as did also the trustees of the Lorillard estate. The court found that the plaintiff was not entitled to the relief sought, and dismissed the complaint, and from the judgment entered upon that decision this appeal is taken.

The plaintiff claims that when he procured the assignment of the lease he obtained not only the interest of a lessee therein, and the right to occupy the premises, but also what he calls the "tenant right," which is the probability that he would be able to obtain a renewal of his lease from the owners of the fee for so long a time as he desired it and complied with their terms. He concedes that this right is not an estate, but rather something in the nature of a good will, arising from the fact that a landlord with a good tenant would prefer to renew the lease with him rather than with any one else. He says that, because of the representations which Fiss & Doerr made to him at the time of the assignment of the lease, that it was a Lorillard lease, and he could have a renewal of it as long as he desired, they are estopped from taking any renewal of that lease so long as he desired to remain on the premises and renew his lease with the owners. This tenant right is well recognized in equity, and the courts have held that a renewal of a lease taken by one who occupies any relation of trust or confidence to the tenant is not a new lease, but is, as the courts express it, a graft on the original lease, and inures to the benefit of the person who had the interest in the original lease; but that principle is only applied where the person who takes the renewal occupies some relation of trust and confidence towards the owner of the term, or where he has by contract assumed such a position, so that it would be a fraud upon such owner if he should be ousted because of the renewal by his trustee or contractor. In the case of Mitchell v. Reed, 61 N. Y. 123, which may be said to be the leading case in this state on that subject, the two parties were partners in the business of conducting a hotel under a lease which was about to expire. Reed, the defendant, without the knowledge of his partner, had taken a renewal of the lease to himself, and Mitchell brought his action to procure a judgment that this renewal inured to the benefit of the firm. He succeeded in the court of appeals, and in one of the opinions there delivered the nature of the tenant right was examined at length by Commissioner Dwight. He held that it grew out of a relationship of trust and confidence, and was a branch of the rule that a trustee cannot profit out of the estate for which he acts. He cites with approval a portion of the argument of Sir Francis Hargrave in the case of Lee v. Vernon, 5 Brown, Parl. Cas. 10, to the effect that the tenant right, although imperfect and contingent in its nature, being still a thing of value, ought to be protected by the courts; and when those who are entitled to its incidental advantages, whether by purchase or other derivation, are disappointed of them by fraud, imposition, misrepresentation, or

unfair practice of any kind, it is fit and reasonable that they should have redress. Accordingly, courts of equity have so far recognized the tenant right of renewal as frequently to interpose in its favor by decreeing that new or reversionary leases gained by means or supposition of the tenant right of renewal should be for the benefit of the same persons who were interested in the ancient lease, and those who procured such new leases, and were legally possessed of them, should be trustees for that purpose. Commissioner Dwight adopts the reasoning of Hargrave as to the ground upon which the protection of the tenant right is based. In the case of Bennett v. Van Syckel, 4 Duer, 462, the good will of a lease or the tenant right was recognized as an interest of value which a court of equity would protect, and the assignor of a lease, who had, before its expiration, taken out a renewal in his own name, was decreed to hold it as trustee for his assignee; but the relief was granted in that case solely upon the ground that at the time of the assignment of the lease Van Syckel, the assignor, had contracted with his assignee that he would give him all the advantage of being the tenant of the lessor as regarding future renting. The court held that the transfer of the good will of the lease was an essential part of the contract of the parties, founded on a valuable consideration, and relating to an interest which, although in reality no more than a reasonable expectation, courts of equity had long been accustomed to recognize and protect. It was a valid contract necessarily implying that no act should be done by the defendant to deprive the plaintiffs of the advantages it was designed to secure to them, and one which a court of equity was bound to enforce in the only manner in which, in consequence of the wrongful acts of the defendant, it was capable of being executed. The court said that the conduct of the defendant in secretly obtaining a renewal of the lease was a plain violation of the contract, and was, therefore, a fraud, the fruits of which he could not be permitted to retain. An appeal was taken by the defendant, but the judgment was affirmed upon the single ground that the defendant, by his contract, with respect to the good will of the lease, had placed himself in a situation similar to that of a trustee. There was in this case no contract made by Fiss & Doerr upon which any such relation could be predicated, but simply a representation as to the custom of the Lorillard estate, which was true in fact, as to the benefit which a lessee was accustomed to receive from them in the renewal of his lease, and which Fiss & Doerr took no steps to deprive the plaintiff of. There is no claim that any of the members of that firm, as such, made any contract with the Lorillard estate for a renewal of the lease, or took a renewal of the lease. It was done by the horse company, which was not in this matter the successor of Fiss & Doerr, and had no legal relations with that firm. The allegation of the complaint is that the act of the Fiss, Doerr & Carroll Horse Company in acquiring the lease was an act done and committed by the procurement of Fiss & Doerr for the purpose of depriving the plaintiff of the building and lease that he had purchased from Fiss & Doerr. That allegation is absolutely without proof to sustain

it, so that the case presented here is only that of a person who, having no relation whatever with the tenant, obtains from the landlord a lease of the demised premises at the expiration of the one which is about to expire. Such an act is no infringement of any right of the tenant, and no violation of good faith, and it is a thing which every person has a right to do if he sees fit. The term having expired, the landlord, in the absence of a contract to renew, is at liberty to refuse to do so, and any one with whom he sees fit to deal can become his tenant, and whoever takes a lease under those circumstances is entitled to the term for his own benefit. Attorney General v. Gains, 11 Beav. 63; 1 White & T. Lead. Cas. Eq. 70, 71.

There is another reason why the plaintiff is not entitled to the relief he seeks in this action. The trustees of the Lorillard estate, the landlords, were under no obligations to renew this lease unless they saw fit to do so. So far as they were concerned, they were at liberty to rent at the expiration of the lease to any one they desired, without any regard to the lease which was about to expire. They saw fit to make a lease of this land, together with other land, because it was more convenient for them to have a larger quantity of land included in one lease. They provided that the property so leased should be occupied by the parties leasing it, and the tenant agreed not to sell or assign the lease, nor the term granted, nor any part of it, nor to underlet the whole or any part of the premises, nor make any alterations in the premises, or suffer to be carried on therein any business other than that mentioned in the lease, without the consent of the landlord. The business mentioned to be carried on was the business of the Fiss, Doerr & Carroll Horse Company for the sale of horses, harness, wagons, and vehicles of all kinds. As the landlords saw fit to make this lease to the horse company, and to prescribe that no other business than this should be conducted by it, and that no other person than it should carry on business there, the court is not at liberty to make a new lease for them, and to require them to accept some one else as their tenant. Certainly it cannot do this in the absence of fraud on the part of the landlord, or collusion with the new tenant; and, in the absence of fraud or collusion, they had the right to lease to any one they wished. For these reasons, without considering whether Fiss & Doerr were at liberty or not to enter into a lease with the Lorillard estate, we think the judgment should be affirmed, with costs. All concur.