RISK *et al. v.* RISHER.

(In Banc.   Oct. 23, 1944.)

[19 So. (2d) 484.   No. 35675.]

Luther A. Smith and Sullivan & Sullivan, all of Hatties-
burg, for appellants.

**Currie & Currie** and **T. Price Dale**, all of Hattiesburg, for appellee.

158

**Roberds, J.,** delivered the opinion of the court.

Mrs. Risher, appellee, as complainant in a bill in equity in this cause, sought, among other things to impress a trust for her use and benefit upon a rental contract made between Mrs. Risk, as lessor, and Mr. Hart, as lessee,

covering a certain two-story building in the City of Hattiesburg, Mississippi. The chancellor decreed Hart to be such trustee, from which decree Mrs. Risk and Mr. Hart appeal.

When the Risk-Hart lease was executed there was an existing lease on the foregoing premises made by Mrs. Risk as lessor to Mrs. Risher as lessee, and Mr. Hart was in possession of a part of the premises as sub-tenant under Mrs. Risher. It is the contention of Mrs. Risher that the provisions of her contract with Hart precluded him from securing a lease from Mrs. Risk and ousting her from the premises, and that the lease he obtained from Mrs. Risk inured to her benefit, she being ready and able to carry out its terms. On the other hand, appellants say that the relation between Mrs. Risher and Hart was merely that of landlord and tenant and that Hart had the right to obtain the lease from Mrs. Risk for his own benefit. The question arises under this state of facts:

On August 26, 1940, Mrs. Risk leased to Mrs. Risher the entire premises for a period beginning October 15, 1940, and ending October 15, 1943, at the rate of $135 per month for the first six months and $150 per month thereafter, payable in advance. That contract contains this provision: "The said party of the second part further covenants with the party of the first part that at the expiration of the time mentioned in this lease, that the lease may be renewed, if agreeable to both parties, the amount of the rental to be agreed upon at the time of renewal."

On April 24, 1942, Mrs. Risher, by written contract, sublet to Hart the second story and a part of the lower story of this building from April 24, 1942, to October 15, 1943, the expiration date of her contract with Mrs. Risk, at a rental of $100 per month, payable in advance, Mrs. Risher retaining a part of the first story. The lease contains this provision: "It is understood by and between all the parties to this contract that the said parties of

the first part now hold a lease or rent contract for the whole of the said building from Annie Risk, the owner thereof, which lease expires on the same day as the expiration of this contract, viz: On the 15th day of October, 1943, which lease the parties of the first part hereto may renew on the same or other terms; now, therefore, in the event the said parties of the first part do renew their lease with Annie Risk, then in that event they agree and bind themselves to renew this contract with the party of the second part, O. E. Hart, Sr., and further in case the parties of the first part hereto renew their lease on the same terms as the current lease, then in that event they will renew this contract with the party of the second part on the same terms herein stated and for the duration of the new lease of the parties of the first part, and in the event they renew it on different terms from the current lease, then they agree to renew this contract on the same consideration in the same ratio and proportion to the new consideration in their renewed lease, and for the duration as their renewed lease." The husband of Mrs. Risher signed the Hart contract with her but the Risk lease was to Mrs. Risher alone.

A further provision gave to each the preference of renting from the other the part of the building rented and occupied by the other.

By contract dated July 13, 1942, Mrs. Risk rented to Hart the entire property for a period of five years from October 15, 1943, at a monthly rental of $250 payable in advance, with the right of renewal for an additional five years on the same terms. The contract recites that Mrs. Risk had theretofore rented the entire premises to Mrs. Risher, and it also refers to the Risher-Hart sub-lease of a part of the premises. It then provides that if Mrs. Risher should default in her contract with Mrs. Risk that Mrs. Risk desires to, and does, let and lease unto Hart from the time of such default to October 15, 1943, the part of the premises retained by Mrs. Risher in her contract with Hart, at a rental of $50 per month.

The oral proof shows that, while the Risk-Hart contract is dated July 13th, the negotiations between them began the last of May or the first of June prior thereto. Mrs. Risk and Hart tesified they started their negotiations after Mrs. Risher had indicated she would not desire to renew, or negotiate for a renewal, of her lease with Mrs. Risk. The testimony on behalf of Mrs. Risher is that she gave no such indication and that it was always her intention to renew her lease or negotiate for another with Mrs. Risk. Presumably the chancellor found for Mrs. Risher on that disputed fact. Mrs. Risk testified she did not intend to renew, or negotiate for a renewal of, her contract with Mrs. Risher. However, the evidence shows, we think, that Mrs. Risher had no notice of such intention until May 24, 1943, when she received a letter from Mrs. Risk to that effect. Thereafter, Mrs. Risher wrote Mrs. Risk she was ready and willing to renew the lease, or negotiate for another. The proof also establishes that the first actual knowledge Mrs. Risher had of the existence of the Risk-Hart contract was when she received a letter from the attorneys for Mrs. Risk dated September 16, 1943, so informing her. In other words, although the Risk-Hart contract had existed for more than a year and Hart had been in possession of his part of the premises, adjoining those occupied by Mrs. Risher, during that time as sub-tenant of Mrs. Risher, neither Mrs. Risk nor Hart had informed Mrs. Risher of the Risk-Hart agreement. Did this situation create a fiduciary, or semi-fiduciary, relation between Mrs. Risher and Mr. Hart? The chancellor held that it did.

The mere relation of landlord and tenant alone is not such a relation. Somthing more is needed. Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 P. 697, 75 A. L. R. 840; Annotation, L. R. A. 1918C, 1052; 32 Am. Jur. 835, Sec. 991; Annotation, 75 A. L. R. 848. But, on the other hand, the relation is not restricted to such confined relations as trustee and beneficiary, partners, prin-

cipal and agent, guardian and ward, managing directors and corporation, etc. Davis v. Hamlin, 108 Ill. 39, 48 Am. Rep. 541; Cushing v. Danforth, 76 Me. 114; 32 Am. Jur. 835, Sec. 991; Probst v. Hughes, 143 Okl. 11, 286. P. 875, 878, 69 A. L. R. 929. It applies to all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise. "It is the nature of the relation which is to be regarded, and not the designation of the one filling the relation." Davis v. Hamlin, supra. In the Probst case, supra, the court said: ". . . a trusteeship may arise by virtue of any relationship of the parties in which it may be said that the one occupying the position of trustee is in duty bound to act in the utmost good faith for the benefit of the other." In 32 Am. Jur., supra, it is said, "The doctrine of implied trusts arising out of renewals applies to fiduciaries of practically every description," and "It has been said broadly that no one who is in possession of a lease or a particular interest in a lease which is affected with any sort of equity in behalf of third persons can renew the same for his own use only, but such renewal must be construed as a graft upon the old stock." In Trice v. Comstock, 8 Cir., 121 F. 620, 61 L. R. A. 176, 57 C. C. A. 646, the court said: "Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated."

What is the result of the application of these principles to the case at bar? The Risher-Hart sub-lease recognized that Mrs. Risher might "renew (her lease) on the same or other terms . . . ." They contracted upon that basis. That was a part of the consideration entering into that contract. If the renewal should be on

the same terms, then the sub-lease would be renewed on the same terms; if different terms, renewal of the sub-lease would be in the same ratio and proportion of the changed terms. Had the original lease been renewed for less consideration, Hart would have gotten the benefit of that. This provision vested in both Mrs. Risher and Hart a valuable right in the renewed contract. Mrs. Risher had a tenant on terms satisfactory to her. Hart was assured of an arrangement agreeable to him. He knew he could remain at the same place, with the benefit of an established business and without the expense of removal. But the provision not only vested rights but it imposed obligations. They were obligated to renew the sub-lease if the original lease should be renewed. It was, of course, to their mutual interest to get the Risk lease renewed on as favorable terms as possible. They had a mutual interest in the subject matter. Competitive bidding by them on that lease would certainly not result in better terms. Hart, by procuring a lease from Mrs. Risk, made it impossible for Mrs. Risher to carry out her obligation to renew with him. Hart's efforts to obtain a lease from Mrs. Risk, at considerably higher rent than Mrs. Risher was paying, within about a month after he made his contract with Mrs. Risher, naturally inclined Mrs. Risk not to renew the lease with Mrs. Risher. Mrs. Risk and Mr. Hart both recognized that Mrs. Risher had some right of renewal because they both said they did not negotiate until they understood Mrs. Risher did not desire to renegotiate her contract. While mistaken as to the fact of Mrs. Risher's desire this attitude showed a recognition of her right. Had Mrs. Risher renewed the Risk lease, on the same or different terms, she would have been legally bound to have made another contract with Hart. Bennett v. Vansyckel, 11 N. Y. Super Ct. 462, 4 Duer 462, appeal dismissed 18 N. Y. 481; McDonald v. Fiss, 54 App. Div. 489, 67 N. Y. S. 34; Hotel Allen Co. v. Allen, 117 Minn. 333, 135 N. W. 812; Brummitt Tire Co. v. Sinclair Refining Co., 18 Tenn.

App. 270, 75 S. W. (2d) 1022; Sharp v. Williams, 141 Fla. 1, 192 So. 476. On the other hand, the provisions in the Risher-Hart contract for renewal between them conferred no legal right upon Hart to obtain an over-head lease from Mrs. Risk. 32 Am. Jur. 830, Sec. 986. Therefore, we think equity, good conscience and good faith precluded Hart from thus acquiring the lease from Mrs. Risk and thereby ousting Mrs. Risher from the premises, and that he holds the Risk lease as trustee for Mrs. Risher, subject to the benefits to himself as provided in his contract with Mrs. Risher. See Holridge v. Gillespie, 2 Johns Ch., N. Y., 30. Appellants say this conclusion is contrary to that reached in Kendrick et al. v. Robertson, 145 Miss. 585, 111 So. 99. But that case is different from this in several material respects. In that case Robertson sold to Kendrick a stock of merchandise located in a building then under lease to Robertson, terminable at the will of the owner or Robertson, there being no provision therein of any kind for renewal. The sale contract to Kendrick said nothing of the good will of the business. The owner terminated the contract by notice September 26, 1924. On April 1, 1925, Robertson procured another lease of the building from the owner for a period of one year. Kendrick undertook to hold Robertson as trustee of that lease for his benefit, which the court refused to do. That was a sale of a stock of merchandise, no reference being made to the lease or good will of the business. Here the original lease is described in the sublease and provisions made in the sub-lease for renewal thereof. There the lease was terminable at will of either party and the new lease was made some seven months after the original lease had been terminated. Here Hart began to negotiate for the over-head lease within approximately a month after he became a sub-tenant and entered into that lease a year and three months before the expiration date of his subcase and that of the original lease. That case has no application to the facts of this case.

But it is said by appellants that the provision in the Risk-Risher contract pertaining to renewal is not legally enforceable; that Mrs. Risk could have declined to agree upon renewal terms. That is true as between the parties to that agreement; nevertheless, as to third persons, there was a possibility of renewal, constituting a property right which the law will protect. Fine v. Lawless, 139 Tenn. 160, 201 S. W. 160, L. R. A. 1918C, 1045; 32 Am. Jur. 834, Sec. 991; Davis v. Hamlin, 108 Ill. 39, 48 Am. Rep. 541; Phyfe v. Wardell, 5 Paige, N. Y., 268, 28 Am. Dec. 430; McCourt et al. v. Singers-Bigger, 8 Cir., 145 F. 103, 7 Ann. Cas. 287.

Nor does the fact that the owner might not, or would not, have renewed the lease with the original lessor entitle the fiduciary to take a renewal in his own name for his own benefit. Fine v. Lawless, supra; 32 Am. Jur. 836, Sec. 992. "If the rule were otherwise, ample room would be left for collusion which it might be difficult for the cestui que trust to expose." Fine v. Lawless, supra [139 Tenn. 160, 201 S. W. 164, L. R. A. 1918C, 1045].

Affirmed and remanded.