WILSON *v.* MARTIN.

In Banc. Oct. 25, 1948.

(37 So. (2d) 254)

(37 So. (2d) 775)

**Dent & Dent**, for appellant.

Homer Currie and **T. J. Wills,** for appellees.

**Griffith, C. J.**

The facts in this case are disputed at every turn, but we shall consider them proved in appellees' behalf so far as a reasonable interpretation of the testimony will permit.

The Crumptons, appellees, thinking that they owned the land here involved, desired to sell it, and appellant Wilson was interested in acquiring it. On or about Jan-

uary 1, 1947, they made an oral contract by which the Crumptons agreed to sell it to Wilson, and Wilson agreed to buy it for a stated cash price. To obtain the purchase money it was necessary for Wilson to negotiate a loan from the bank with the land as security. They went together to the bank and the banker agreed to make the loan when furnished an attorney's certificate that the title was clear; whereupon it was further agreed that Wilson would have the title examined (at his own expense) and would report to the Crumptons any defects found in the title and that the Crumptons would then take the necessary steps to make the title good.

Wilson went to the county courthouse and employed an attorney to look into the title. In due course the attorney reported to Wilson that the land had been sold to the State in 1933 for delinquent taxes and had not been redeemed. Wilson then went to a notary, who prepared a formal application to the State Land Office for the purchase of the land by him, Wilson, but Wilson said nothing to the Crumptons about what had been discovered in the title examination. Not hearing from Wilson, one of the Crumptons inquired of him about it and Wilson stated to him that he, Wilson, was no longer interested in the land, and did not intend to buy it,—saying nothing of his application to the State Land Office.

Appellee Martin was also a prospective purchaser of the land, and when Wilson advised the Crumptons that he was no longer interested, they went to Martin who agreed to buy it, if in fact Wilson no longer wanted it, and Wilson repeated to Martin what he had already told the Crumptons, that is, that he, Wilson, was no longer interested in the land and did not intend to buy it. Martin thereupon went back to the Crumptons and purchased the land under a warranty deed, dated April 28, 1947.

When the conversations between the several parties, above outlined, occurred, Wilson had heard nothing from his application in the land office, and it later transpired

that the records in the land office touching the tax sale were incomplete, but this was later corrected and appellant received the forfeited tax land patent on September 17, 1947. No contention is urged here which would challenge the validity of the tax sale or the sufficiency of the application to purchase from the State or the due and proper execution of the State's patent to appellant Wilson as grantee therein.

Wilson, a few months later, filed his bill to cancel Martin's deed as a cloud on his title; and defense was made on the contention that because Wilson did not inform the Crumptons as he agreed to do about what he had found on an examination of the title and did not thereby alert the Crumptons to the necessity to purchase the State's title, he, Wilson, in acquiring that title became a trustee for the Crumptons with no right to hold against the Crumptons' grantee, Martin, Wilson's only right being to have reimbursement for what he paid for the patent, and the court so decreed.

It is at once to be seen that what appellees are relying on is the failure of Wilson to live up to his stated contract with the Crumptons, his obligation, if any, being plainly within the coverage of the oral contract. But being within the express terms of the contract, it was an express trust, if any trust at all, and not being in writing amounted to nothing. Sec. 269, Code 1942; Miazza v. Yerger, 53 Miss. 135. What appellant Wilson ultimately did was in effect what Yerger did in the cited case.

This leaves only the question whether Wilson's statement to Martin, the purchaser from the Crumptons, that he, Wilson, was not interested in the land and did not intend to purchase it, may be invoked as an estoppel in favor of Martin. In the first place, on this inquiry we are met with the fact that the immediate cause of any injury to Martin was that his vendors, the Crumptons, had no title, a fact revealed by the public records equally available to Martin and the Crumptons as to appellant. Wilson said nothing to Martin about the title and nothing

to lead him away from an examination into it. Martin's neglect to examine into the title, as most prudent purchasers do, is not chargeable to Wilson, and none would suppose that he was under any obligation legal or equitable to volunteer to Martin any information as to the condition of the title or want of title.

In the second place, the statement by Wilson of his intention not to purchase was not of a past or present fact, intention not being a fact within the ordinary rules relating to estoppel for the very obvious reason that an intention may change while present or past facts are fixed. 10 Am. Jur., Estoppel, Sec. 52, p. 657. An exception to the general rule is permitted in what is called the promissory estoppel where the party estopped has made a statement of intention which, when fairly interpreted, is a promise that he will forego or waive some existing interest or right, which being reasonably acted on by the other party would result in his injury if the promise or waiver is not kept. 10 Am. Jur., Estoppel, Sec. 53, p. 658. But, as already mentioned, Wilson had in the land no interest or right whatever—except the right to try to purchase from the State, and Martin had an equal right in that respect.

Some cases have extended the doctrine of the promissory estoppel beyond the dependable anchorage of a present right or interest; but we have found none which has ventured so far as to hold that any mere statement of present intention by a prospective purchaser to another prospective purchaser, neither of them having any present legal or equitable interest, would bind the person making the statement not to purchase an outstanding title from another party when the latter is wholly disconnected from the negotiations which transpired between all the other parties. We think that to so hold would be impracticable as not being within dependable safeguards, and we must decline it. In Lusk-Harbison-Jones v. Universal Credit Co., 164 Miss. 693, 145 So. 623, we called attention to the necessity of cau-

tion in dealing with the principle involved in promises without consideration, such as that now before us so far as Wilson and Martin are concerned, and we must now adhere to that caution.

In our opinion no defense has been made out against appellant's title and that the decree should and must be reversed and a decree entered here adjudging appellant's title to be good as against the appellees herein, but we will remand the cause on the sole issues of rents and improvements.

Reversed, decree here, and remanded.

**Homer Currie** and **T. J. Wills,** for appellee.

The suggestion of error was overruled without an opinion.

**Roberds, J.** (dissenting).

I have concluded the Suggestion of Error should be sustained. One of the cardinal maxims of equity is that he who comes into equity must come with clean hands. The fertility of the mind of man in devising schemes to defraud is so great the courts have not undertaken to announce a definition which will include all of them. In 23 Am. Jur. 753, Sec. 2, one definition is "anything which is calculated to deceive, whether it is a single act or a combination of circumstances, or acts or words,

which amount to the suppression of the truth, or mere silence." The facts disclosed in the original opinion are sufficient, in my opinion, to demonstrate that appellant was guilty of legal fraud, and that he does not come into equity with clean hands. His bill should be dismissed.