238 Miss. 839 (1960)
120 So.2d 553
McILWAIN, et ux.
v.
DOBY, et al.
No. 41456.
Supreme Court of Mississippi.
May 16, 1960.
*841 W. Vol Jones, Waynesboro; Ethridge, Minniece & Bourdeaux, Meridian, for appellants.
*842 Julian P. Alexander, Jr., Jackson, for appellees.
*843 KYLE, J.
*844 This case is before us on appeal by F.H. McIlwain and his wife, Mrs. Opal Beard McIlwain, defendants in the court below, from a decree of the Chancery Court of Wayne County rendered in favor of Mrs. Olga Beard Doby and others, complainants in the court below, establishing a constructive trust in favor of the complainants in an undivided one-fourth mineral interest in certain lands therein described conveyed to the defendants by W.O. Carter, Jr., Trustee, pursuant to the foreclosure sale of said mineral interest by the said trustee on March 27, 1956, and vesting title to said mineral interest in the complainants and the said defendant, Mrs. Opal Beard McIlwain, as tenants in common.
The record shows that on or about May 4, 1943, a forfeited tax land patent was issued by the state to Lee Beard conveying to the grantee therein named the lands described as the E 1/4 of the NE 1/4, and the NE 1/4 of the SE 1/4, and the SE 1/4 of the NW 1/4 of Section 7, Township 9 North, Range 6 West, in Wayne County; that on February 10, 1948, Lee Beard conveyed to L. Barrett Jones and Ben Stevens, jointly, a one-half full participating mineral interest in the above described lands; that, on or about July 10, 1954, a forfeited tax patent was issued by the state to Mrs. Viola McRae Beard conveying to her the tract of land described as the W 1/2 of the SW 1/4 of said Section 7, Township 9 North, Range 6 West; and that on July 8, 1954, Mrs. Viola McRae Beard conveyed to Ben Stevens an undivided one-half mineral interest in said 80-acre tract. The record also shows that on May 1, 1955, Ben Stevens executed a deed of trust on an undivided one-fourth mineral interest in and to the above described lands to W.O. Carter, Jr., Trustee for Bancroft-Whitney Company; that the said deed of trust was foreclosed on March 27, 1956, by a trustee's sale of said undivided one-fourth mineral interest; that sale was duly made at public outcry, at the front door of the county courthouse; and that at said sale F.H. McIlwain appeared and bid on and purchased said mineral interest for *845 the sum of $1895, and a deed of conveyance of said mineral interest was duly executed by the trustee conveying said mineral interest to the said F.H. McIlwain and his wife, Mrs. Opal Beard McIlwain. The record also shows that the L. Barrett Jones one-fourth mineral interest was sold about a year later to one Harry D. Owen for the sum of $1000.
The record shows that Lee Beard, the owner of the surface interest in the lands described in the forfeited tax land patent issued on or about May 4, 1943, died sometime during the year 1953; and that he left surviving him as his only heirs at law his widow, Mrs. Viola McRae Beard, and twelve children and one grandchild, Bonnie Jean Fleming, only child of a deceased daughter of the said Lee Beard; that Mrs. Viola McRae Beard, the widow of the said Lee Beard, deceased, died sometime during the month of November 1957, leaving as her only heirs at law the above mentioned children and grandchild, all of whom are named as complainants in the bill of complaint filed in this cause, except the defendant, Mrs. Opal Beard McIlwain, who is named as a defendant. The record also shows that oil was discovered on the above mentioned lands about a year and a half after the appellants' purchase of the above mentioned mineral interest; and that on March 25, 1958, F.H. McIlwain and his wife, Mrs. Opal Beard McIlwain, executed a royalty deed conveying to Nolan Clark a 1/160 mineral interest in and to the property described as the SE 1/4 of the NE 1/4, and the NE 1/4 of the SE 1/4 of said Section 7, Township 9 North, Range 6 West.
The bill of complaint in this cause was filed by Mrs. Olga Beard Doby, Roland G. Beard, Lee A. Beard, Jr., James Calvin Beard, Frances Beard Lee, Mary Beard Covington, Leola Beard Hester, Bonnie Jean Fleming, Beatrice Beard Whitney, Florence Beard Stanley, Andrew McRae Beard and Carolyn Beard McIlwain, on June 4, 1958.
*846 In their bill the complainants alleged that, when it became known to the heirs of the said Lee Beard that the deed of trust executed by Ben Stevens on the undivided one-fourth mineral interest in the above described lands was to be foreclosed, it was agreed that several of the heirs would attend the said sale and that the complainant, Olga Beard Doby, would bid on and purchase the mineral interest at the foreclosure sale, and that in the event she should be the successful bidder she would convey to each complainant and to the defendant, Opal Beard McIlwain, his or her pro rata share of said minerals on payment to her by each of the parties of his or her share of the price paid at the foreclosure sale; that several of the complainants set about to aid the said Olga Beard Doby in arranging the finances to enable her to purchase said mineral interest; and that during the discussions concerning the purchase of said mineral interest the defendant F.H. McIlwain proposed to the said Olga Beard Doby and Carolyn Beard Allen that he would attend the foreclosure sale and purchase said mineral interest in behalf of and for the benefit of the complainants and the defendant Opal Beard McIlwain, and that he would then convey to each of said parties his or her pro rata share of said mineral interest upon the payment to him by each of said parties of his or her pro rata share of the purchase price paid at the foreclosure sale, plus accrued interest. The complainants further alleged that the said defendant F.H. McIlwain "fraudulently coaxed, persuaded and induced" the said Olga Beard Doby to refrain from bidding at said foreclosure sale, and fraudulently assured her and the complainant Carolyn Beard Allen that, if they would refrain from bidding on said property at said sale, he would purchase said property and would promptly convey to each of the complainants his or her pro rata share on receipt by him of the purchase price of such share plus accrued interest; that the said defendant F.H. McIlwain held himself out as a fiduciary and represented *847 that he intended to serve in such position of confidence and trust for the complainants, and that the complainants believed that the said defendant was acting in good faith; that the said defendant, however, at no time intended to perform his said fiduciary undertaking, but at all times intended to breach said fiduciary undertaking and to deceive and defraud the complainants. The complainants further alleged that approximately three days after the foreclosure sale the complainant Olga Beard Doby tendered her pro rata share of the foreclosure sale price plus interest to the defendant, F.H. McIlwain, and that the defendant wrongfully refused to convey to the said Olga Beard Doby her pro rata share, and then and there advised her that he would convey the pro rated shares to the complainants only when he was tendered the purchase price of all of the pro rated shares in a lump sum; and that on or about Thanksgiving Day in 1957 the complainants tendered to the defendants 12/13 of the total amount paid for said mineral interest at the foreclosure sale plus interest and demanded that the defendants execute proper conveyances to them of their pro rated shares of said mineral interest; and that the defendants then and there wilfully and fraudulently in breach of said trust refused to convey said shares or any part thereof to the complainants.
The complainants prayed that on the final hearing of said cause the defendants be declared to be trustees of the legal title to said mineral interest, and hold the same in trust for the complainants, and that the defendants be ordered to execute and deliver to the complainants, upon payment to them by the complainants of such sum as the court might find to be just and equitable, a deed to said mineral interest.
The defendants in their answer denied the material allegations of the bill of complaint relating to any alleged agreement that the said F.H. McIlwain should attend the foreclosure sale and purchase the mineral interest in behalf of and for the benefit of the complainants *848 and the defendant, Opal Beard McIlwain, or any representations made by the said F.H. McIlwain to the complainants to induce them to refrain from bidding at the foreclosure sale. The defendants specifically denied that there was any special relation of confidence or trust between the defendant, F.H. McIlwain, and any of the complainants by reason of close family relationship or for any other reason. The defendants admitted that the defendant, F.H. McIlwain, attended the foreclosure sale on March 27, 1956, and became the highest bidder for the purchase of said mineral interests for the sum of $1895, and that said mineral interests was struck off to him and conveyed to him by a trustee's deed. The defendants denied that the complainants had at any time tendered to him any money for any interest in said minerals. The defendants averred in their answer that the purchase of said minerals at said foreclosure sale was made more than two years before the filing of the said bill of complaint, and that said bill of complaint was not filed until the value of said minerals had been greatly increased by reason of the production of oil on said lands, and that the complainants had been guilty of laches.
Several witnesses testified during the hearing before the chancellor. Mrs. Olga Beard Doby, Mrs. Carolyn Beard Allen, Mrs. Ella Hutto and Pete Lee were the main witnesses who testified for the complainants.
Mrs. Olga Beard Doby testified that about a week before the trustee's sale, while she was in F.H. McIlwain's cafe with her sister, Mrs. Carolyn Beard Allen, and Mrs. Hutto, McIlwain told her that the minerals were "coming up for sale" and asked her if she knew about it, and she said, "Well, I hadn't heard about it, I guess I better go over there and bid on them and buy them in." McIlwain then said to her, "No, don't go over there and run them up on me, * * * I am going to buy them in and let each one have yours back, but you will have to pay me some interest on the money because I have got to borrow the money." Mrs. Doby further stated that four or five *849 days after the sale had taken place she went in and offered Mr. McIlwain her money, and he would not even look at her. She stated that she had $400 in her purse at that time, and she thought that she could pay her part. But McIlwain stated that he would not take the money of one, that all of them would have to get together and pay him in one lump sum within thirty days time. She stated that McIlwain had not mentioned the time limit of thirty days during their prior conversation. On cross-examination Mrs. Doby admitted that, after the trustee's sale of the Ben Stevens minerals, McIlwain told her that the Barrett Jones minerals were being offered for sale, and that McIlwain told her to call Barrett Jones on the telephone and ask him if he would sell his minerals to her, but she did not call Barrett Jones about the matter. Mrs. Ella Hutto and Mrs. Carolyn Beard Allen testified that they were present when the conversation relating to the purchase of the minerals took place between Mrs. Doby and F.H. McIlwain in McIlwain's cafe about a week before the trustee's sale of the minerals; and both witnesses confirmed the statements made by Mrs. Doby as to the remarks made to her by McIlwain at that time.
Pete Lee testified that he was married to Mrs. Frances Beard Lee, and that he had made plans to bid on the Ben Stevens mineral interest when it was sold. He had planned to put up his personal property and borrow some money from the bank, and bid on the mineral interest for the benefit of the Lee Beard children. He did not bid on the mineral interest, however, for the reason that, on Sunday afternoon before the sale, while he was in McIlwain's cafe he told McIlwain that he had planned to bid on the mineral interest, and McIlwain said to him, "Don't go over there and bid against me, I am planning on bidding on it and letting each child have their pro rata share." Lee stated that he had no further conversation with McIlwain or his wife about the mineral interest until Thanksgiving Day in 1957, when he and some of the other heirs went to McIlwain's house with an attorney *850 and offered to pay McIlwain for the pro rata shares of the other heirs. Lee stated that McIlwain told the heirs who were present at that time he was not interested, that he had given them thirty days to get together and pay him for their pro rata interests in the minerals, if they expected to share in the mineral interest, and they had failed to meet that offer.
The defendant, F.H. McIlwain, testified that he talked to Mrs. Doby while she was in his cafe a few days prior to the trustee's sale of the minerals; but he denied specifically that he had any such conversation with Mrs. Doby as that testified to by her, Mrs. Allen and Mrs. Hutto. McIlwain stated that he told Mrs. Doby that the minerals were to be sold, and that he had been out to see Mrs. Beard to see if she wanted to go fifty-fifty with him and buy the mineral interest, but Mrs. Beard would not agree to do that. He then asked Mrs. Doby whether she would be willing to go in with him on a fifty-fifty basis, and Mrs. Doby said that she was not going to have anything to do with it. McIlwain stated that he had no further conversation with Mrs. Doby about the matter before the sale. McIlwain stated that he told Mrs. Beard and Mrs. Mary Lynn Beard Covington on the day that the minerals were sold that, if they wanted to bid on the mineral interest, he would not bid at all. He stated that a week or ten days after the sale he told Mrs. Doby that if the Lee Beard heirs wanted a part of the mineral interest he would let them have it at just exactly what he had paid for it, provided each of the heirs paid him $20 in addition to the purchase price, and that he would give them thirty days to arrange for the purchase and pay him the money, and that if she were interested she should go ahead and get up the money and bring it to him. He stated that Mrs. Doby came back three or four days later and told him that he might as well forget about it, that everyone that she had seen didn't have the money. He saw Roland Beard later and told him about the proposition that he had made to Mrs. Doby. Roland Beard told *851 him that he had just as well count him out because he did not have the money. McIlwain stated that Pete Lee and others came to his house, with a lawyer from Richton, on Thanksgiving Day 1957, and Pete Lee said to him that they had come there to see whether he was willing for them to have their part of the minerals; that was after oil had been discovered. McIlwain stated that he saw Mrs. Doby in his cafe sometime after he had purchased the mineral interest at the trustee's sale, and that he told her at that time that Barrett Jones wished to sell his interest in the minerals, and if she wished to purchase that interest she should get in touch with him. Mrs. Doby told him about a week later that she had decided not to call Barrett Jones about the matter. The Barrett Jones interest was sold a short time thereafter to someone else. McIlwain denied that Pete Lee had any conversation with him on Sunday, March 26, 1956, about bidding on the minerals.
The chancellor stated in his opinion that "The sole question in this lawsuit so far as this court is concerned is, did Mr. F.H. McIlwain, by his acts and his words, do anything or say anything that would lead the complainants or some of them to believe that he was going to buy the minerals in at the sale and that he was going to buy them in for the interest of all of the heirs." The chancellor found that the defendant McIlwain made the representation that he would purchase the mineral interest at the foreclosure sale in behalf of and for the benefit of each of the complainants; that the complainants relied on said representation and were misled thereby and refrained from bidding at the sale; and that the complainants were entitled to the relief prayed for in their bill of complaint.
The appellants' attorneys argue four points as grounds for reversal of the decree of the lower court. The first point argued is that the court erred in holding that the alleged trust which arose from the representations of F.H. McIlwain was enforceable and not within *852 the statute of frauds. In view of the conclusion which we have reached on that point, it will not be necessary for us to discuss the remaining assignments of error.
We think that the court erred in holding that the alleged trust which arose as a result of the representations of F.H. McIlwain was enforceable and not within the statute of frauds.
Section 269, Mississippi Code of 1942, Recompiled, provides as follows:
"Hereafter all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will, in writing, or else they shall be utterly void; * * * but where any trust shall arise or result by implication of law, out of a conveyance of land, such trust or confidence shall be of the like force and effect the same as it would have been if this statute had not been passed."
The textwriter in Pomeroy's Equity Jurisprudence, Vol. 4, Fifth Edition, Constructive Trusts, paragraphs 1056, 1056a, after discussing the conditions under which trusts ex maleficio may arise, says:
"Par. 1056. (3) No Trust from a Mere Verbal Promise.  The foregoing cases should be carefully distinguished from those in which there is a mere verbal promise to purchase and convey land. In order that the doctrine of trusts ex maleficio with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not pretend to enforce verbal promises in the face of the statute; it endeavors to prevent and punish fraud, by taking from the wrongdoer *853 the fruits of his deceit, and it accomplishes this object by its beneficial and far-reaching doctrine of constructive trusts. (By weight of authority failure or refusal to perform a parol promise to hold in trust or convey is not sufficient basis for a constructive trust.) * * *.
"Par. 1056a.  Effect of Confidential Relation.  A recognized exception to the general rule that a constructive trust will not arise from the violation of a mere verbal promise to purchase and convey, or to hold in trust, prevails where a confidential relationship exists between the grantor and the grantee. Thus constructive trusts have been imposed where the relation between the parties was that of principal and agent, attorney and client, husband and wife, parent and child, grandparent and grandchild, and the like in respect of transactions where the promisor was the dominant party. The rule is not applied from the mere showing of relationships such as brother and sister, and employer and employee (See Sec. 963)."
In 54 Am. Jur., 182, Trusts, par. 241, the textwriter says: "An oral agreement to bid in real property at a public, judicial, tax, or similar sale for another who is not the owner and who has no existing interest in the property sold is not only void and unenforceable as an express trust under the statute of frauds, but it is not enforceable as a constructive trust, in the absence of fraud, agency, confidence, or circumstances giving rise to an estoppel. * * *."
In the case of Miazza v. Yerger, 53 Miss. 135, the complainant alleged in her bill of complaint against Yerger and Helm, that Yerger undertook, promised and agreed, as her agent and attorney, to attend a sale of real estate under a trust deed, and bid in one-half of the property for the complainant, who had made arrangements to obtain from Helm the money to pay for such interest; and that Yerger, instead of doing as he promised, bought the property for himself and had title made to himself instead *854 of to the complainant. The Court held that the agreement was within the statute of frauds, Sec. 2896, Code 1871, and was not saved by the proviso in favor of trusts arising or resulting by implication of law out of a conveyance of land. In its opinion in that case the Court said:
"Again, it is announced, in an equally authoritative manner and with decided emphasis, that no trust in land can be set up by mere parol agreement, that no trust results from the breach of a mere parol contract, and that parol proof cannot be received to establish a resulting trust in lands purchased by an agent, and paid for by his own funds, no money of the principal being used for the payment; for the relation of principal and agent depends upon the agreement existing between them and the trust in such a case must arise from the agreement and not from the transaction, and where a trust arises from an agreement, it is within the statute of frauds and must be in writing. Perry on Trusts, par. 134, 135."
The principle stated in that case has been reaffirmed many times in the later decisions of this Court. Robinson v. Leflore, 59 Miss. 148; Ragsdale v. Ragsdale, 68 Miss. 92, 8 So. 315; Bush v. Bush, 134 Miss. 523, 99 So. 151; Wilson v. Martin, 204 Miss. 196, 37 So.2d 254, 37 So.2d 775.
In the case of Dunphy v. Ryan (1886), 116 U.S. 491, 6 S.Ct. 486, 29 L.Ed. 703, the Court held that an agreement, on the part of A to acquire title in his own name to a tract of land upon the best terms possible, and when acquired to convey to B an undivided part thereof, and on the part of B to pay A his proportionate part of the purchase money and expenses incurred in obtaining title, was a contract for the sale of lands within the statute of frauds; and the contract being verbal and not in writing as required by the statute, A, after performing his part of the agreement, could not recover from B his share of the price and expenses in an action at law founded upon *855 and seeking to enforce the contract; nor in equity, under a statute which prescribes same forms at law and in equity, when the pleadings showed no allegation to lay a foundation for equitable relief. The Court in its opinion in that case said: "The only complaint of misconduct on the part of the plaintiff which can be inferred from the pleadings is his refusal to perform a verbal contract for the purchase of lands. But the mere breach of a verbal promise for the purchase of lands will not justify the interference of a court of equity. Purcell v. Miner, 4 Wall. 513. There is no fraud in such a refusal. The party who so refuses stands upon the law and has a right to refuse. Under the circumstances of this case the statute is as binding on a court of equity as on a court of law. If the mere refusal of a party to perform a parol contract for the sale of lands could be construed to be such a fraud as would give a court of equity jurisdiction to enforce it, the statute of frauds would be rendered vain and nugatory."
(Hn 1) From the authorities cited above, it clearly appears that, ordinarily, oral agreements to join in the purchase of land do not give one party any enforceable right to claim the benefit of the purchase by the other; (Hn 2) that viewed as agreements to transfer an interest in the land to be acquired, they are clearly within the statute of frauds; (Hn 3) and that such agreements cannot be given effect as a promise to hold for the benefit of another, save in those jurisdictions where express trusts need not be evidenced by writing. (Hn 4) The mere breach of the agreement that the complainant may share in the benefit of the purchase is not fraud in obtaining the title, and so will not give rise to a constructive trust. See Annotation 42 A.L.R., 10, 63, and cases cited.
(Hn 5) The charge alleged in the bill of complaint in this cause against the defendant McIlwain is that he agreed that he would attend the foreclosure sale and purchase said mineral interest in behalf of and for the benefit of the complainants and the defendant Opal Beard McIlwain, *856 and that he would then convey to each of said parties his or her pro rata share of said mineral interest upon the payment to him by each of said parties of his or her pro rata share of the purchase price paid at the foreclosure sale, plus accrued interest; and that he wilfully and fraudulently refused to convey to them their pro rata shares of the mineral interest.
(Hn 6) As stated by the North Carolina Court in Avery v. Stewart, 136 N.C. 426, 48 S.E. 775, "The mere nonperformance of a beneficial parol agreement is not such fraud or bad faith as will induce a court of equity to compel performance." There must be a salutary and proper limitation of the doctrine of parol trusts, and it will be found, we think, in confining the equity to enforce trusts arising out of parol agreements to transactions involving some element of fraud or bad faith apart from the mere breach of the agreement itself, which makes it inequitable that the vendee should hold the legal title absolutely or discharged of any trust.
The appellees say that there were present in this transaction equitable circumstances which distinguished the case from Miazza v. Yerger, supra, and other cases in which the court has applied the principle laid down in Miazza v. Yerger; and the appellees cite in support of their contention that a constructive trust was created the cases of Robinson v. Leflore, 59 Miss. 148; Risk v. Rishes, 197 Miss. 155, 19 So.2d 484; Sample v. Romine, 193 Miss. 706, 8 So.2d 257, 10 So.2d 346; Pitchford v. Howard, 208 Miss. 567, 45 So.2d 142; Triplett v. Bridgforth, 205 Miss. 328, 38 So.2d 756. But the facts in each of those cases are clearly distinguishable from the facts in this case. In Robinson v. Leflore, supra, the record showed that Mrs. Leflore made arrangements with Robinson to borrow the money to enable her to purchase the lands at the foreclosure sale under a mortgage. She and Robinson attended the sale together, and when the sale took place Robinson bid the amount due on the trust deed, proclaiming to the persons present that he was *857 bidding for Mrs. Leflore. Mrs. Leflore remained in possession of the land for many years and up to the time of her death; and the court held that Robinson held title to the land subject to a resulting trust in favor of Mrs. Leflore.
In Risk v. Risher, supra, the relation of lessee and sublessee existed between the parties and the court held that the relation was a fiduciary relation. In Sample v. Romine, supra, the relationship of the parties was that of joint adventurers, and that relationship had existed prior to the procurement of the leases involved in the controversy. In Pitchford v. Howard, supra, the bill charged that Mrs. Pitchford had employed Howard prior to his taking title to the land in controversy to arrange a loan and had agreed to pay Howard $100 for his services; that Mrs. Pitchford owned the property and was defrauded thereof by the active solicitation of Howard after Howard had been paid to protect her interest. In Triplett v. Bridgforth, the complainants owned an interest in the land which was sold under the mortgage deed of trust.
(Hn 7) In the case that we have here neither the appellants nor the appellees owned any interest in the one-fourth mineral interest which was being offered for sale by the trustee on March 27, 1956. McIlwain was not employed as an agent to act for the complainants in bidding on or purchasing said mineral interest. None of the complainants furnished any of the money to pay for the minerals. No fiduciary relation existed between McIlwain and the complainants or any of them. None of the complainants testified that McIlwain ever transacted any business for them, or that they confided in or advised with him regarding their business affairs. This Court has held in several cases that of presumption of fraud does not arise because a blood relationship accompanied by affection between the parties; and the relationship between brother and sister is not intrinsically one of confidence.
*858 The alleged trust in this case was an express trust resting upon a parol agreement, and was utterly void under the statute of frauds.
We think that the chancellor was manifestly wrong in holding that a constructive trust had been created as a result of the refusal of the appellants to convey to each of the appellees a pro rata share of the minerals purchased by them at the trustee's sale.
For the reasons stated above the decree of the lower court will be reversed, and a decree will be entered here dismissing with prejudice the appellees' bill of complaint.
Reversed and judgment rendered for appellants.
McGehee, C.J., and Holmes, Ethridge and Gillespie, JJ., concur.