JOHNSON, et al. *v.* LANCASTER

No. 43719          December 6, 1965          180 So. 2d 645

*John H. Hollman, III, John H. Holloman,* Columbus, for appellants.

*Threadgill & Hicks*, Columbus, for appellee.

SMITH, J.

This was a suit brought in the Chancery Court of Lowndes County by appellant, Ralph Johnson, against appellee, James A. Lancaster, seeking to establish a resulting trust in certain commercial property in the City of Columbus. After the bill of complaint was filed, Commercial Building Corporation filed a petition to be allowed to intervene and to adopt Johnson's bill of complaint, and was granted leave to do so.

The complainant, Johnson, was engaged in the real estate development business on a large scale, operating in several towns and cities in Alabama and Mississippi. His business was conducted through a number of corporations which he organized for that purpose and of which he was president and principal stockholder. Appellee, Lancaster, was engaged in the insurance and real estate business in the City of Columbus and had enjoyed considerable success in the real estate development and of his business. Both were successful businessmen with wide experience in real estate extending over a considerable period of time.

For the purpose of this opinion, the facts may be summarized as follows:

As president of the Eastlane Corporation and East-lawn Corporation, two of Johnson's Mississippi corporations (neither of which is a party to this suit), Johnson arranged with Lancaster to develop and sell some houses and lots in the Columbus area.

For this purpose, Eastlane Corporation maintained an account in a Columbus bank, known as "the East-lane Corporation — Acct. No. 2". Johnson, as president of Eastlane Corporation, placed money in this account for Lancaster's use in improving and developing certain property. Lancaster wrote the checks, including checks to himself for his commissions, but was required to account to Johnson for each expenditure in minute detail. Sometimes, Eastlane would owe Lancaster, and, at least on one occasion, Lancaster deposited funds of his own in the Eastlane account, known as "Eastlane Corporation — Acct. No. 2".

Lancaster had engaged successfully in the real estate business for a long time before he began assisting Johnson's corporations with certain of their projects in the Columbus area. This business with Johnson for East-lane and Eastlawn Corporations was only one of Lancaster's real estate activities and he continued to deal with real estate on his own as he had been doing previously. Throughout the time covered by the evidence, Lancaster bought and developed, sold and rented commercial and other property on his own account with which neither Johnson, Eastlane, nor Eastlawn had anything to do, and in which they neither had nor claimed to have any interest.

On one of his visits to Columbus, Johnson discussed with Lancaster a piece of commercial property for which the owner was asking $20,000.00. They agreed that the price was too high.

Johnson testified that, on a subsequent occasion, Lancaster orally agreed with him (he testified that in his dealings with Lancaster he was acting as president of

his corporations, Eastlane and Eastlawn) that he, Lancaster, would buy this property, take title in his, Lancaster's, name and they would then organize a corporation, and Lancaster would convey the lot to that corporation. None of the other terms of this alleged agreement appear from the evidence. Sometime afterward, Lancaster wrote a check on the Eastlane Corporation account for $200.00 which was marked "payment for option on commercial property". No details of that transaction appear. Later, Lancaster bought the property in question for $20,000.00, and took the deed in his name. Lancaster borrowed the money himself to pay for the lot, and he constructed thereon, with funds which he also obtained through loans made to him, two buildings costing between $60,000.00 and $70,000.00. These buildings have been rented by Lancaster to tenants.

Lancaster continued to handle various of the Johnson corporation projects and to account for the funds used. The corporation known as Commercial Building Corporation, now one of the appellants, was organized and Johnson and Lancaster became officers and stockholders. Johnson called on Lancaster to deed this property to the Commercial Building Corporation, and Lancaster declined to do so.

This suit resulted, in which Johnson claims that a fiduciary relationship existed between himself and Lancaster by virtue of the course of their dealings with each other, and that the act of Lancaster with respect to the purchase of this particular commercial property created a resulting trust therein for the benefit of the Commercial Building Corporation (chartered after the purchase), alleging as a basis the oral agreement which he said he had with Lancaster to buy the lot and to convey it to a corporation afterward to be formed. The bill of complaint contained a prayer that the court establish this trust and require Lancaster to convey the propery to Commercial Building Corporation, or, in the

alternative, to convey a half interest therein to Johnson, individually.

It was developed in the testimony that the $200 down payment drawn from the Eastlane Corporation account for the opinion had been repaid by Lancaster into the account. Moreover, Johnson testified that often that account owed Lancaster for commissions and he did not know whether it owed him anything at the time the $200 was drawn from it or not. It was admitted that the financing of the purchase of the property (except the $200 which belonged to Eastlane Corporation and which was repaid) was done by Lancaster, and that neither Johnson, individually, nor Eastlane, nor Eastlawn, nor Commercial Building Corporation, had any money whatever in the purchase or development of the property in question. Johnson did not know from whom the property had been purchased and had never seen the deed. Neither he, nor any of his corporations, was legally obligated financially for any part of the purchase price or cost of development of the property.

Johnson testified at great length and in detail. The case for the complainants was fully developed both on direct and cross examination of the witnesses.

At the conclusion of complainants' case, the defendand made a motion, upon a number of grounds, to exclude the evidence and to find for the defendant. The chancellor sustained this motion and delivered an opinion in which he found that (1) no fiduciary relationship existed between Johnson and Lancaster, (2) the circumstances shown by the evidence did not reveal that a resulting trust had been created requiring the conveyance of the property to Commercial Building Corporation, or to Johnson himself, and, (3) Johnson's testimony showed only the making of an oral agreement for the conveyance of real estate which was unenforceable under the statute of frauds.

In Bush v. Bush, 134 Miss. 523, 531, 99 So. 151, 152 (1924), this Court cited the principles relating to constructive trusts found in 3 Pomeroy's Equity Jurisprudence section 1037 (3d ed. 1905) as controlling:

. . . Pomeroy lays down the controlling principle thus, ''In order that this effect may be produced, however, it is absolutely indispensable that the payment shall be actually made by the beneficiary or that an absolute obligation to pay should be incurred by him as a part of the original transaction of purchase at or before the time of conveyance. No subsequent and entirely independent conduct, intervention or payment on his part would raise any resulting trust.'' . . .

The Court further cited the case of Logan v. Johnson, 72 Miss. 185, 16 So. 231 (1894), which approved the following language from 2 Pomeroy's Equity Jurisprudence section 1040 (3d ed. 1905):

. . . The evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the beneficiary beyond a reasonable doubt. . . 134 Miss. at 532, 99 So. at 152.

In Miazza v. Yerger, 53 Miss. 135, 139, 140 (1876), an attorney ''undertook, promised and agreed, as her agent and attorney to attend the sale and bid in one half of said property for the complainant who had made arrangements to obtain from Mr. Helm the money to pay for such interests; and that Yerger, instead of doing as he promised, bought the property for himself and had title made to himself instead of the complainant.'' In affirming the ruling of the lower court declining to establish a resulting trust, the Supreme Court held:

. . . It is announced, in an equally authoritative manner and with the decided emphasis, that no trust in land can be set up by mere parol agreement, that no trust results from the breach of a mere parol contract, and that parol proof cannot be received to es-

tablish a resulting trust in lands purchased by an agent, and paid for by his own funds, no money of the principal being used for the payment; . . .

Parol evidence . . . is not admissible to prove an agreement by one to purchase land for another, for this would be to establish an express trust founded on contract and within the Statute of Frauds. Perry on Trust, § 137; Gibson v. Foote, 40 Miss. 788. . . . It is plain that the appellant's assertion of right against Yerger to the land bought by him rests upon her allegation of the existence and the breach by Yerger of a parol agreement to attend the sale and buy the property for her. Such an agreement is not enforceable in the Courts of this State, because it is in the teeth of the Statute of Frauds and is not saved by the proviso. . . .

For a collection of Mississippi authorities on this subject, see McIlwain v. Doby, 238 Miss. 839, 120 So. 2d 553 (1960).

██ █ In reviewing the decision of the chancellor, we accept as proved, as he did, all of the facts in evidence favorable to appellants' case and all favorable inferences that reasonably may be drawn therefrom, ██ █ conclude that the chancellor decided the case correctly and that his findings are in accord with the evidence adduced viewed from that standpoint.

Affirmed.

*Lee, C. J., and Gillespie, Jones and Inzer, JJ.,* concur.