OWEN, WILLIAM C., Jr., Senior Judge.
In this contract action the trial court entered summary judgment for the defendants on the basis of judicial estoppel. We reverse because we perceive a genuine factual issue which would preclude summary disposition.[1]
Appellant (the “P.A.”) sought approximately $50,000 as the alleged value of legal services furnished by it through its employee and sole stockholder, Bernard Ber-man, Esq. (“Berman”), to appellees, Dr. Stern and his professional association (“Stern”). The suit had involved numerous claims and counterclaims, including a claim of legal malpractice (subsequently dismissed by the court), all of which had been vigorously contested over a period of some three and one-half years. Finally, in September, 1996, the court entered a summary judgment on liability in favor of the P.A., and scheduled a trial solely on the damage issue.
After the summary judgment on liability was entered but before a trial had been *149 held, Berman and his wife filed under oath their joint petition for bankruptcy. Ber-man’s schedule of assets listed his 100% stock ownership in the P.A., to which he assigned a value of one dollar. He also indicated that the P.A. had a collection claim against Stern, but provided no information regarding the value of the claim. The nominal value which Berman had placed on the P.A.’s stock did not escape the vigilance of the Trustee for the estate, Daniel L. Bakst, Esq., who questioned it. As a result, more than a year after the petition in bankruptcy was filed, the Trustee and Berman executed a Stipulation in the bankruptcy proceeding which provided that any amount recovered on the claim against Stern (after payment of attorney’s fees and costs) was to be divided equally between the Trustee and Berman.
Fortified with this turn of events, Stern then filed in this case his own motion for summary judgment. He argued, in part and without amending the answer to assert it as an affirmative defense, that on the basis of the valuation Berman had placed on the P.A.’s stock, the P.A. was judicially estopped from pursuing any type of relief on the claim.[2] In support of that position, he cited the case of In re Galerie Monnaies of Geneva, Ltd. v. Deutsche Bank A G., New York Branch, 55 B.R. 253 (S.D.N.Y.1985), affirmed, 62 B.R. 224 (S.D.N.Y.1986). Notwithstanding the earlier summary judgment finding the P.A. entitled to recover from Stern, the court granted the motion and subsequently entered final judgment in favor of Stern. Neither the order granting the motion nor the subsequent summary judgment for Stern stated the basis for the court’s ruling, but all agree that the basis was judicial estoppel.
The doctrine of judicial estoppel has been articulated in a variety of ways. For example, in Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166-67 (4th Cir.1982), the court stated:
In certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. “Judicial estoppel” is invoked in these circumstances to prevent the party from playing “fast and loose” with the courts, and to protect the essential integrity of the judicial process.
* * *
The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, but they may be found where neither collateral estop-pel nor equitable estoppel ... would apply. Its essential function and justification is to prevent the use of “intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.” (Citations omitted).
In Moore v. Neff, 629 S.W.2d 827, 829 (Tex.App.1982), the court stated:
The doctrine of judicial estoppel bars a party who successfully maintains a position in a prior judicial proceeding from afterward adopting an inconsistent position if so doing would result in prejudice to his adversary. (Citations omitted).
In Melton v. Anderson, 32 Tenn.App. 335, 222 S.W.2d 666, 669 (1948), the court stated:
[Judicial estoppel] rests solely on public policy which- exalts the sanctity of the oath. The object is to safeguard the administration of justice by placing a restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings.
*150 Finally, in the case upon which the trial court relied, In re Galerie Monnaies of Geneva, the court stated:
Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position. It applies whether the position first assumed has been suecessful ... or not.
Id., at 259 (citations omitted).
The substance of Stern’s argument on appeal in support of the summary judgment is that Berman, the 100% stockholder of a one-man law firm, while seeking the protection of the bankruptcy court, willfully misrepresented under oath the true value of the P.A.’s stock at only one dollar. There is a basic fallacy with this argument. The value of Berman’s 100% stock ownership of the P.A. simply does not equate, as a matter of law, to the value of the P.A.’s lawsuit against Stern.[3] But that aside, there exist genuine factual issues as to whether Berman made a misrepresentation in the value of the stock and, if so, to what extent such was relevant.
We come, then, to what seems a real conundrum. How does a bankruptcy petitioner in Berman’s shoes place a fair market value on stock in a P.A. whose major, if not sole, asset is a pending lawsuit for legal fees against defendants who claim to be judgment proof? One would have to make a realistic estimate of the amount likely to be awarded, apply to that a reasonable factor for the risk or likelihood of being unable to collect after judgment, and then reduce the resulting product to a net recovery after payment of attorney’s fees and costs.[4] For example, one who anticipated obtaining a judgment for the full amount claimed, but recognized the likelihood of collecting was remote, realistically would place a low market value on the stock. Evidence might tend to show that market value to be entirely reasonable under the circumstances described. Should that low market value become, under a somewhat strained application of judicial estoppel, a limiting factor on the amount to which the P.A. is actually entitled in the underlying suit? While we think that such an example would not be the type of self-contradiction to which the doctrine of judicial estoppel would apply, we can say with confidence that the P.A. should have, the opportunity to present evidence to the trier of fact on the question of whether Ber-man misrepresented the market value of the P.A.’s stock.
REVERSED.
DELL and STEVENSON, JJ„ concur

. In so doing, we raise the question, but do not decide, whether judicial estoppel was appropriate here even had the facts been without dispute.

. The motion also argued that Berman failed to list the instant lawsuit as an asset of his estate. Of course, the lawsuit did not become an asset of Berman's bankruptcy estate until the Stipulation-was filed and approved.

. In simplest terms, the value of an entity's stock is determined, at least generically, by the value of the entity's assets less its liabilities. This lawsuit is an asset of the P.A. We have yet to know, as has the trial court, anything of the other assets of the P.A., or of its liabilities. If factually, by way of example, the P.A. has no liabilities, and this lawsuit is its sole asset, then the value of Berman's 100% of the P.A.'s stock would equal, not the amount which the P.A. claimed was owned by Stern, but the net amount the P.A. would eventually receive after the indeterminate debt was made certain by the judgment, that judgment was collected, and the P.A.'s attorney had been paid his one-third contingency fees and out-of-pocket costs.

. The P.A.’s likelihood of being able to market this as an account receivable would certainly be a fact issue.