839 So.2d 702 (2002)
SCI FUNERAL SERVICES OF FLORIDA, INC., Appellant,
v.
Anel HENRY, Appellee.
No. 3D00-3607.
District Court of Appeal of Florida, Third District.
November 20, 2002.
Rehearing and Rehearing Denied March 7, 2003.
*703 Shook, Hardy & Bacon and Courtney B. Wilson and Gaye L. Huxoll, Miami, for appellant.
Clyne & Self and Reginald J. Clyne, Coral Gables, and Donnise A. Desouza, for appellee.
Before COPE, GREEN and RAMIREZ, JJ.
Rehearing and Rehearing En Banc Denied March 7, 2003.
PER CURIAM.
This is an appeal of an adverse judgment after jury verdict in a lawsuit for tortious interference with a contractual relationship. We affirm.

I.
Plaintiff-appellee Anel Henry was employed by defendant-appellant SCI Funeral Services of Florida, Inc. as a group leader in the sales department. Upon being promoted to that position, plaintiff was required to execute a non-compete agreement. The contract contained a non-compete provision which states:
8. Non-Compete Provisions. For a period of twelve (12) months after my *704 employment has been terminated for any reason with or without cause, I will not directly or indirectly solicit or sell any products, goods or services similar to, related to or competitive with the Company's products, goods or services in Dade County, Florida.
....
13. Notice. I authorize the Company to notify others, including clients and customers and my future employers, of the terms of this Agreement and my responsibilities.
R. 17-19.
In the summer of 1994, a female employee made a charge of sexual harassment against the plaintiff.[1] SCI began an investigation and temporarily suspended the plaintiff.
During the suspension, the plaintiff received orders from the United States Army to report for military reserve duty in Panama, beginning on August 29, 1994. The plaintiff left the United States for Panama on August 22.
The evidence showed that on August 24 or 25, SCI employee Evelyn Ortiz, called the plaintiff in Panama to advise him that the sales manager was terminating his employment. In the meantime, the Army extended the plaintiff's tour of duty. The plaintiff eventually returned to Miami from Panama in July 1995. On his return the plaintiff contacted SCI and asked to resume employment. SCI refused.
On August 15, 1995, the plaintiff applied for work with Woodlawn Park Cemetery Company, a competitor of SCI. Woodlawn made an offer of employment to commence in October. Woodlawn's management approved the contract on September 5, and the plaintiff began work with Woodlawn in October.
In November 1995, SCI's counsel sent a letter to the plaintiff, with a copy to Woodlawn, threatening suit for violation of the non-compete agreement.[2] It was SCI's *705 position that SCI had not formally terminated the plaintiff until his August 1995 return from military duty, and that the twelve-month period began to run in August of 1995, not in August of 1994 when the plaintiff departed for Panama.
Upon receiving its copy of the demand letter, Woodlawn called SCI to inquire about SCI's intentions. An SCI officer advised that SCI intended to sue Woodlawn if Woodlawn employed the plaintiff. As a result, on November 22, 1995, Woodlawn fired the plaintiff.
The plaintiff's position was that his twelve-month non-compete period had expired. By his analysis, he had ceased work with SCI in August of 1994 and did not report to work with Woodlawn until October of 1995. He contended that the non-compete agreement by its terms was no longer enforceable.
Woodlawn advised the plaintiff that they would rehire him if he could obtain a release from SCI. The plaintiff attempted to discuss this with his former supervisor at SCI, but the supervisor would not speak with him.
The plaintiff retained counsel, who in February 1996 wrote to SCI's counsel requesting a release. SCI countered with a proposal to exchange mutual releases. The plaintiff refused because he did not want to give up any potential cause of action he may have against SCI.
In April 1996 plaintiff's counsel persuaded Woodlawn that the plaintiff's non-compete period with SCI had expired. Woodlawn rehired the plaintiff. SCI never filed suit to enforce the non-compete agreement.

II.
The plaintiff sued SCI for damages for having him terminated from his job at Woodlawn. He alleged breach of contract (Count I), reasoning that the non-compete period had expired and that SCI had breached the contract by threatening suit on an expired non-compete agreement. The plaintiff alleged alternatively (Count II) that SCI had tortiously interfered with his employment with Woodlawn.
In Count III, the plaintiff alleged that SCI had violated the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4311. That statute prohibits a denial of reemployment on account of a person's performance of military duty. The plaintiff claimed that SCI had violated the federal statute by terminating him while he was away on military reserve duty, and refusing to reemploy him on his return.
Because the plaintiff's complaint included a federal cause of action, SCI removed the case to the United States District Court for the Southern District of Florida. Finding that SCI's reasons for terminating the plaintiff were not related to his military service, the court entered summary judgment in favor of SCI on the federal statutory claim.
The federal court also found that there had been no breach of contract, and entered summary judgment in favor of SCI on that claim.[3] The federal court declined to exercise jurisdiction over the tortious interference claim, and remanded it to the Florida courts for consideration.
Upon the return of the case to the Florida court, SCI moved to dismiss, arguing that the tortious interference cause of action *706 was barred by the litigation privilege and the privilege for settlement discussions. The pretrial motions, as well as the trial objections and motion for directed verdict, were denied.
The jury returned a verdict for the plaintiff for $500,000, which the trial court remitted to $350,000. SCI has appealed.

III.
SCI argues that its demand letter and the conversations thereto were absolutely privileged under the litigation privilege recognized by the Florida Supreme Court in Levin, Middlebrooks, Mabie, Thomas, Mayes, & Mitchell, P.A. v. U.S. Fire Insurance Co., 639 So.2d 606 (Fla.1994). The Levin court held that the litigation privilege bars causes of action in tort for statements made in connection with a judicial proceeding.[4] SCI argues that the litigation privilege exists for a demand letter which threatens litigation, and any communications pertinent thereto.
We decline to reach this issue because we conclude that SCI is estopped from raising it. We reach that conclusion on the following analysis.
It stands to reason that an employer cannot threaten an employee with litigation over a non-compete agreement which has expired. If the employer wrongly does so, thus causing the employee to lose his or her job, there must necessarily be a judicial remedy for such conduct.
In the present case, SCI successfully persuaded the federal court that the plaintiff in this case did not have a remedy by way of an action for breach of contract. To our way of thinking it is inconsistent for SCI then to argue in the Florida courts that the plaintiff does not have an action in tort. We therefore conclude that SCI is estopped from raising the argument that there is an absolute bar to the tort claim on account of the litigation privilege. For the same reason we decline to entertain SCI's argument under the economic loss rule. See Blumberg v. USAA Casualty Ins. Co., 790 So.2d 1061, 1066 (Fla.2001); Bernard Berman, P.A. v. P. Gary Stern, M.D., P.A., 731 So.2d 148, 149 (Fla. 4th DCA 1999).
SCI argues that it also has a privilege to protect its own pecuniary interest under the non-compete agreement. See Ethyl Corp. v. Balter, 386 So.2d 1220, 1225 (Fla. 3d DCA 1980). Under the facts of the present case, however, SCI's conduct was not protected by such a privilege.
The non-compete agreement provided that upon separation from employment, the plaintiff would observe a twelve-month non-competition period. It necessarily follows that after the twelve-month non-compete period, the employee was allowed to work in a competing business.
In August 1994, the plaintiff left the United States on military duty and did not return until July 1995. On his return, he asked SCI to rehire him and SCI refused.
In mid-August, the plaintiff applied for work with Woodlawn, who offered him a position to begin in October. Thus, when the plaintiff began work with Woodlawn, it had been fourteen months since his departure from SCI on military leave. There is no claim that the plaintiff engaged in any competing work during the twelve months following his departure for Panama.
Under any reasonable analysis, the twelve-month non-compete period began with the plaintiff's departure from Miami in August of 1994, and expired in August of 1995. SCI wrote its demand letter in *707 November of 1995. SCI had no privilege to enforce an expired non-compete agreement against the plaintiff. Thus, SCI had no pecuniary interest privilege under the facts of the present case.
SCI argues that the plaintiff's absence for military duty did not count against the twelve months non-compete period. SCI argues that the plaintiff was not formally separated from SCI until his return from Panama, and that SCI could "tack" the non-compete period on to the end of the military leave.
We reject SCI's argument on this point. SCI contracted for a twelve-month non-compete period, and that is what SCI received. No competition was taking place during the military leave, and the military leave should have been counted as part of the non-compete period.
SCI argues that the twelve-month period cannot be deemed to begin until July 1995, because when the plaintiff applied for unemployment compensation, he stated that his termination date was July 1995. The plaintiff replies that after the unemployment compensation hearing, the unemployment referee found that the effective termination date was in August 1994.
In any event, we do not think fixing the date of eligibility for unemployment compensation benefit establishes, under the circumstances present here, the time frame for the non-compete period. That is so because the plaintiff's paid period of employment with SCI was followed by a paid period of employment with the Army, thus leading to a question what the correct termination date is for unemployment compensation purposes. Regardless of how that question is answered, we think the period of military leave counts as part of the non-compete period, where the plaintiff did not compete during his period of absence and where he did not resume employment with SCI upon the end of the military leave.
SCI argues alternatively that it was allowed to send the demand letter because the plaintiff interviewed with Woodlawn on August 15, 1995, which was eleven and a half months after his departure for military leave and still within the twelve-month non-compete period. Again, we reject SCI's argument. It is not a violation for the plaintiff to interview for another job, so long as he does not take any action to compete during the twelve-month non-compete period. In this case, Woodlawn's management did not approve the employment until September 1995, which was thirteen months after the plaintiff's departure for military leave, and the plaintiff's reporting date with Woodlawn was not until October 1995, which was fourteen months after the plaintiff's departure for military leave. Under the facts of the case there was no pecuniary privilege. While we are inclined to think that the above analysis follows as a matter of law, in any event the above facts were presented for the jury's consideration, which found in favor of the plaintiff.
SCI argues that the trial court erred by allowing evidence of the plaintiff's request for a release from SCI in February of 1996, and SCI's counterproposal to exchange mutual releases. SCI argues that these were inadmissible settlement discussions. See § 90.408, Fla. Stat. Given the wording of the stipulation regarding the admissibility of the plaintiff's correspondence on these issues, we can see how the trial court reached the conclusion that it did on the issue of admissibility. However, even if SCI is correct on this point, the admission of the evidence was harmless.
We conclude that the remaining points are without merit. We thus affirm both on the appeal and the cross-appeal.
Affirmed.
*708 COPE, J. (concurring).
In the interest of clarifying Florida law, I address the contract analysis performed by the federal court.
The federal court ruled that SCI's action in enforcing an expired non-compete agreement did not amount to a breach of contract. As to that claim, Florida law was controlling. Respectfully, the federal ruling does not accurately reflect Florida law.
In the federal court, the plaintiff argued that by writing the November 1995 demand letter, SCI had breached the implied covenant of good faith and fair dealing.
In determining that there was no breach of contract, the federal district court said:
The Eleventh Circuit has recognized that absent breach of an express term of the contract, an action cannot be maintained for breach of the implied covenant of good faith. See Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir.1990); Burger King Corp. v. Holder, 844 F.Supp. 1528, 1530 (S.D.Fla.1993) (Nesbitt, J.). The implied covenant of good faith is not an independent term in a contract, but rather a doctrine that modifies the meaning of all explicit terms in a contract. See id. at 1429. When examining a contract, provisions "should be read in common with the other provisions of the contract." Gibbs v. Air Canada, 810 F.2d 1529, 1533 (11th Cir.1987). The parties' intentions should be "determined from an examination of the whole contract" and not just isolated phrases. Lalow v. Codomo, 101 So.2d 390, 393 (Fla.1958).
When considering the Non-Compete Agreement as a whole, the Court finds that the [contract] did not expressly impose a duty upon Defendants to not interfere with Plaintiff's right to engage in competing activities upon the expiration of the twelve month period.
Order, Henry v. SCI Funeral Services of Florida, Inc., No. 96-1084-Civ, Order at 5-6 (S.D.Fla. Nov. 18, 1997); see also Barnes v. Burger King Corp., 932 F.Supp. 1420, 1438-39 (S.D.Fla.1996). I cannot agree with this interpretation of Florida law.
The non-compete agreement in this case provided for a twelve-month period of non-competition. That is an express term of the contract.
It follows by necessary implication that after the twelve-month non-compete period has expired, the employee is allowed to compete. That is an implied term of the contract. It is not explicitly stated, but necessarily follows from the contract's provisions.
The Florida Supreme Court has said, "A contract includes not only the things written, but also terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken." Sharp v. Williams, 141 Fla. 1, 192 So. 476, 480 (1939) (citations omitted); see also 11 Fla. Jur.2d Contracts § 169 (1997).
This court has said:
A written instrument may have legal effect beyond its actual words, resultant upon its wording and purpose. It must be considered to embody obligations which legally are to be implied from its wording and the relationship of the parties, and obligations thereunder that are implied by law, although not actually specified therein, are legal obligations founded on the contract, which in this instance was a written contract.
Heredia v. Safeway Trails, Inc., 369 So.2d 418, 420 (Fla. 3d DCA 1979) (citations omitted). In Heredia, the court held that a bus ticket included the implied term that the bus company convey the passenger to the destination safely. Id. at 420. A passenger *709 was allowed to bring suit for breach of contract after the passenger was injured in a wreck. Id. at 420.
The same analysis applies in the context of the non-compete agreement. There was an implied term that the employee would be free to compete after one year of non-competition. Under Florida law, the plaintiff would be allowed to bring an action for breach of the implied promise. Heredia. And so long as there is an enforceable provision of the contract, it follows that the implied covenant of good faith and fair dealing can be invoked.[5]
It is, of course, true that the contract claim is not now before us. I address the issue to point out that Florida's contract remedies are not as narrow as the federal court believed.
NOTES
[1] At the trial the complainant denied that there had been any harassment by the plaintiff.
[2] The letter states:

Dear Mr. Henry:
This firm represents SCI Funeral Services of Florida, Inc. d/b/a Memorial Sales.
As a condition of your employment with Memorial Sales, you executed a Confidentiality and Non-Compete Agreement for Group Leader on April 11, 1994. The Agreement provides that for a period of twelve (12) months following the termination of your employment with Memorial Plan, you will not:
1. Solicit any employee or former employee of Memorial Sales;
2. solicit any present or former customers or clients of Memorial Sales in competition with Memorial Sales; or
3. engage in any solicitation or sales activity in Dade County, Florida, in competition with Memorial Sales.
It has come to our attention that subsequent to the termination of your employment with Memorial Sales, you have become employed with Woodlawn Park Cemetery Company. We have received information indicating that you may have violated the terms of your Non-Compete Agreement and may have done so in the course and scope of your employment with Woodlawn Park Cemetery Company.
We hereby demand you cease any such activities and that you comply with the terms of the Confidentiality and Non-Compete Agreement for Group Leader. By copy of this letter, we are exercising our option under paragraph 13 of the Agreement to notify your current employer of the terms of the Agreement and your obligations under the Agreement. If you continue to violate the Agreement, we will commence legal proceedings against you and/or any other parties who may have participated in your breach of duty and/or induced you to breach your obligations to Memorial Sales. These remedies include, but are not limited to, immediate injunctive relief, forfeiture of any profits earned as a result of the breach, and attorney's fees incurred in enforcing the Agreement.
[3] The plaintiff appealed the ruling on the contract claim to the United States Court of Appeals for the Eleventh Circuit. That court affirmed without opinion. Henry v. SCI Funeral Services of Florida, 180 F.3d 270 (11th Cir.1999).

We express no opinion on the correctness of the federal court's contract analysis.
[4] As the Levin court cited Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984), with approval, presumably the cause of action for malicious prosecution continues to exist and would not be barred by the litigation privilege. See Wright, 446 So.2d at 1165.
[5] Assuming for purposes of discussion that the Levin litigation privilege ordinarily applies to a presuit demand letter, it would not apply where, as here, the writing of the demand letter constitutes a breach of contract. That is so because the Levin litigation privilege operates to bar causes of action in tort. It does not bar a valid cause of action in contract.